**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerry P. RAMUSACK, Defendant–Appellant.**

No. 89–2881.

United States Court of Appeals, Seventh Circuit.

Submitted March 19, 1991.*

Decided April 1, 1991.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R. App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Jerry P. Ramusack, Yankton, S.D., pro se.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and PELL, Senior Circuit Judge.

PER CURIAM.

Defendant Jerry Ramusack, formerly an Administrative Officer for the Chicago Division of the United States Drug Enforcement Administration (DEA), pleaded guilty to two counts of mail fraud for defrauding the DEA out of $185,000. He appeals from the denial of a motion to reduce his sentence under Fed.R.Crim.P. 35. We affirm.

Starting in 1972, Ramusack, a career government employee, began overseeing personnel and fiscal matters at the DEA office. By all accounts he was an effective administrator, receiving several performance awards and a letter of commendation from the Chief Administrator of the DEA in Washington, D.C. He also had a darker side. Between 1983 and 1988, he personally profited to the tune of $109,000 from the sale of 41 DEA-owned vehicles. After selling the cars at auction or through bids, Ramusack would submit false documents to the DEA which understated the sale price of the cars. He then pocketed the difference. He even reported selling a seized boat for $975 which in fact he kept for himself and later sold for $12,000.

Ramusack also set up phony auto repair businesses to service the DEA auto fleet. He and his friends would perform the repair and maintenance work at night. Then he would submit bogus invoices to the DEA. He received $57,000 for this work. He cashed insurance settlement checks payable to the DEA for damages to DEA vehicles and kept the proceeds. Finally, Ramusack ran a small chemical waste disposal service on the side. When the DEA received hazardous chemicals such as cyanide crystals, he would sell, burn or dump them. He then billed the DEA on an invoice from a dummy company and personally received $3,500.

A two count information charged Ramusack with mail fraud in violation of 18 U.S.C. § 1341. Each count carried a maximum penalty of five years imprisonment and a maximum fine of $250,000. He pleaded guilty to both counts. In his plea agreement, Ramusack agreed to make restitution to the government for $185,000 and to pay $100,000 of that amount before sentencing.

At sentencing, Ramusack made no objection to the Presentence Investigation Report (PSI). The PSI listed his assets, which included a house, an apartment building, three condominiums, a townhouse, a Corvette and a speed boat, at $450,000. The district court sentenced Ramusack to five years of imprisonment on Count I. On Count II, the court sentenced him to five years probation and 1,000 hours of community service. In addition on Count II, the court imposed a fine of $20,000 and ordered restitution at the agreed amount of $185,000.

Even though he could have received a ten-year term of imprisonment for his mail fraud, Ramusack made a motion to reduce the sentence under Rule 35. In an attached letter, he defended his various practices and explained how each conferred a benefit on the DEA. He contended that his net worth was exaggerated in the PSI—although he failed to provide any different amount, and that the DEA discouraged its employees from writing character references. He also argued that he was held to a higher standard than other mail fraud convicts because he was an employee of the Department of Justice.

For sentences such as this one, imposed prior to the implementation of the Sentencing Guidelines, sentencing courts have wide discretion in determining what sentences to impose. *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Johnson*, 903 F.2d 1084, 1089 (7th Cir. 1990). Our standard of review is therefore limited. *United States v. Dougherty*, 895 F.2d 399, 405, *cert. denied*, —— U.S. ——, 110 S.Ct. 3249, 111 L.Ed.2d 759 (1990) (citing *Dorszynski v. United States*, 418 U.S. 424, 431, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974)). This court will not disturb

such a sentence imposed within statutory limits unless the trial court relied on improper or unreliable information in exercising its discretion or did not exercise any discretion at all. *Dougherty*, 895 F.2d at 405.

Ramusack first argues that the district court failed to exercise any discretion when it imposed the sentence. For example, he contends that under the Sentencing Guidelines he would have received only a 12 to 18 month term of imprisonment. But the parties agreed before sentencing that Ramusack committed his crimes in 1985 and 1986. The Guidelines do not apply to offenses occurring before November 1, 1987. *Johnson*, 903 F.2d at 1092. It is irrelevant that had this been a Guidelines case, the defendant might have received a lighter sentence. *Id.*

He argues that the court failed to exercise any discretion in imposing the $20,000 fine because he did not have the ability to pay it in light of the agreed restitution, and because his lengthy sentence precludes him from working. With assets of $450,000 minus $185,000 in restitution, Ramusack was left with over a quarter of a million dollars. The district court properly exercised its discretion in imposing this relatively modest $20,000 fine. *See United States v. Sato*, 814 F.2d 449, 452 (7th Cir.), *cert. denied*, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987) (upholding $20,000 fine for tax fraud).

Ramusack claims that his sentence was disparately harsh compared to other defendants sentenced in the Northern District of Illinois, such as those sentenced for fraud involving securities. A mere showing of disparity without more does not demonstrate an abuse of discretion. *United States v. Beverly*, 913 F.2d 337, 359 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991); *United States v. Briscoe*, 896 F.2d 1476, 1519 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). To make an inference of impropriety Ramusack must show that the judge—or in this case the judges of the Northern District—imposed disparate sentences on similar defendants

without explanation. *Id.* Ramusack was not an ordinary defrauder. He worked not only for the government, but for the DEA, an agency entrusted with enforcing the Nation's drug laws. Public trust is essential to the smooth operation of this agency, and the district court adequately explained that this breach of trust entitled Ramusack to a fairly substantial stay in prison. Public officials such as Ramusack, no less than the former state court judges recently convicted in the so-called "Greylord" trials, can be expected to pay an additional price at sentencing for violating the public trust. In fact, the Sentencing Guidelines now provide expressly for such an enhancement. *See* U.S.S.G. § 3B1.3.

This is not a case where the district court failed to exercise any discretion in sentencing. The court considered many favorable factors including Ramusack's lack of a criminal record, his family situation, his standing in the community, his job performance, his acceptance of responsibility, and his agreement to make restitution—all relevant considerations. The court weighed these factors against the seriousness of a crime which called into question the integrity of a key federal law enforcement agency. No more is required.

Next Ramusack claims that the district court relied on inaccurate information contained in the PSI in reaching its sentence. He claims for example that the PSI overestimated the value of his assets. The proper procedure for challenging such allegedly inaccurate information is laid out in Fed.R.Crim.P. 32(c)(3). In accordance with that Rule, the district court gave the defendant a copy of the PSI and then prior to sentencing gave him an opportunity to challenge any information in it. *See* Rule 32(c)(3)(D). At the hearing, Ramusack said that he had read the report and his attorney added that they had no objection. By failing to object in a timely manner to the financial information in the PSI, he has waived any objection to the accuracy of the report. *Briscoe*, 896 F.2d at 1521 and n. 35; *United States v. Holguin*, 868 F.2d 201, 205 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 97, 107 L.Ed.2d 60 (1989).

■ Finally, Ramusack argues that the district judge was biased because she had been the Chief Prosecutor and Director of the President's Drug Task Force. In effect Ramusack is attempting to bring a motion for recusal based on bias, which must first be brought before the district court. It cannot be raised for the first time on appeal. *United States v. Slaughter*, 900 F.2d 1119, 1126 n. 5 (7th Cir.1990). His argument is reviewable therefore only for plain error. The fact that a judge is familiar with the workings of a defendant's government agency does not establish personal bias or prejudice *per se*, and Ramusack has not shown that any of the judge's rulings or statements hinted of bias. *See id.; United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir.1985), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986). Ramusack has failed to make any showing of plain error.

The decision of the district court denying Ramusack's motion to reduce his sentence is

AFFIRMED.