**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eddie L. FRANKLIN and J.L. Houston,**
**Defendants–Appellants.**

**Nos. 98–3014, 98–3015.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1999.

Decided Nov. 22, 1999.

Victoria J. Peters, Matthew M. Schneider (argued), Office of the United States Attorney, Criminal Appeals Division, Chicago, IL, for Plaintiff–Appellee.

Howard B. Levy (argued), Chicago, IL, for Defendant–Appellant Franklin.

James D. Tunick (argued), Hill & Associates, Chicago, IL, for Defendant–Appellant Houston.

Before POSNER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

In the United States District Court for the Northern District of Illinois on August 7, 1997, J.L. Houston and Eddie Franklin were convicted by jury trial of participating in racketeering and narcotics conspiracies. Judge James B. Zagel presided over the consolidated cases. The convictions of Franklin and Houston arose from their involvement in the El Rukns street gang. Their primary claim on appeal is that Judge Zagel made comments about the El Rukns in 1986, when he was Director of the Illinois State Police, and, therefore, he should have recused himself from their case. By failing to pursue the recusal argument before the district court, Houston and Franklin have not preserved this issue for appellate review. Their other evidentiary claim also lacks merit. We affirm their convictions.

## I. HISTORY

The El Rukns were a street gang active on Chicago's South Side. The El Rukns followed a strict hierarchy, with a single leader, Jeff Fort, supported by a number of hand-picked "generals," including defendants Houston and Franklin. Franklin often ran the organization's weekly council

meetings, where its activities, including the sale of narcotics, were discussed. He also supervised the security and narcotics trade at certain buildings controlled by the El Rukns and sold narcotics himself. Houston operated as the connection to the organization's primary sources for certain street drugs, Talwins and Blues. He often traveled to Detroit to acquire these drugs, as well as to Miami to acquire marijuana. Houston also participated in the gang-related murders of several individuals, including Charmane Nathan, Chalmers Tyler and Ronnie Bell.

In the late 1970s, law enforcement agencies launched an investigation into El Rukn activities. Throughout the next decade, many agencies attempted to break up the organization, often working together on particular operations in multi-jurisdictional task forces. During the mid–1980s the Illinois State Police became involved in various operations designed to thwart El Rukn activities. At this time, Judge Zagel was the Director of the Illinois State Police. In this capacity, Judge Zagel had little day-to-day involvement with operations, but often served as a representative for the agency to the public.

In late 1985 or early 1986, the El Rukns attempted to train a number of their members as security guards, so that they could legally carry handguns. The organization employed a dummy corporation, Security and Maintenance Services ("SMS"), to hire El Rukn members who were then subcontracted to a fast food franchise owned by El Rukn Noah Robinson. However, SMS never sought a state license to supply security guards. After the SMS guards had been installed at the El Rukn controlled restaurant, a multi-jurisdictional task force, including FBI, BATF, Illinois State Police, City of Chicago Police and South Carolina authorities, organized a sting operation to disrupt this enterprise. An Illinois State Police Officer posed as a gem dealer, hired SMS to provide security for him and attempted to enter a deal with various El Rukns involving guns and drugs. On June 19, 1986, the task force raided SMS offices and arrested eighteen employees for supplying security guards without a proper license.

Judge Zagel was not involved personally with the sting operation on SMS. However, after the raid was conducted, Zagel and then-Cook County State's Attorney Richard Daley held a press conference to announce the operation's success. At the press conference, Judge Zagel made statements about the SMS employees and the El Rukns. He said that SMS "would not be my first choice to guard any valuables." He further stated that "[s]treet gangs have grown to rival organized crime in the scope of their operations, and in the savagery in which they control entire sections of the city."

Over three years later, in October 1989, the work of these crime-fighting operations culminated in the indictment of thirty-seven men for participating in a racketeering enterprise and narcotics conspiracy. Houston and Franklin were among these thirty-seven, and both were charged with two counts of racketeering conspiracy and one count of narcotics conspiracy. The three counts of conspiracy were supported by 175 alleged acts in furtherance of the El Rukns organization. Houston was scheduled to be tried before Judge Suzanne Conlon with several other men in July 1991, but on July 24, 1991, Judge Conlon declared a mistrial with respect to Houston only. His case was severed from the others and merged with Franklin's case before Judge John Tinder. The trial before Judge Tinder proceeded to jury, and on April 22, 1992, the jury returned a verdict of guilty on each count against both men. Following the trial, Judge Tinder sentenced each man to life imprisonment on each count of the indictment, with the sentences to run concurrently.

Following three years of post-trial evidentiary hearings, Judge Tinder granted both Houston and Franklin's motions for a new trial on October 17, 1995. All the

remaining defendants from the original thirty-seven were assigned to Judge Zagel. One defendant, Noah Robinson, filed a motion and supporting affidavit asking that Judge Zagel recuse himself under 28 U.S.C. § 144 and 28 U.S.C. § 455. On November 2, 1995, Judge Zagel denied Robinson's motion for recusal. A year and a half later, on April 22, 1997, Houston filed a motion to adopt the pre-trial motions of the other co-defendants appearing before Judge Zagel. On the same day, Houston independently filed a motion for recusal pursuant to 28 U.S.C. § 455(a). On April 29, Judge Zagel denied Houston's motion for recusal but did not rule on Houston's motion to adopt. Houston did not seek mandamus on his motion for recusal, and he did not renew the motion to adopt. Franklin filed no relevant pre-trial motions.

A jury trial was held before Judge Zagel from July 8, 1997, until August 7, 1997. Both defendants were tried on two counts: one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and one count of narcotics conspiracy, in violation of 21 U.S.C. § 846. During the trial, the prosecution used wiretap tape recordings obtained by the FBI. These tape recordings had been duplicated many times, sometimes by commercial duplicating services. At trial, both Houston and Franklin objected to the admission of this evidence on the ground that the government failed to establish a clear chain of custody. On August 7, 1997, the jury returned a guilty verdict on both counts against Houston and Franklin. On June 18, 1998, both Houston and Franklin were sentenced to life imprisonment.

## II. ANALYSIS

### A. Recusal

■ We review a district court judge's decision not to recuse himself for abuse of discretion or showing of prejudice. *See United States v. Bunch*, 730 F.2d 517, 519 (7th Cir.1984). However, we only review such issues when they have been raised properly before the district court. We have held that, in order to preserve a recusal motion filed under 28 U.S.C. § 455(a), a defendant must immediately move for a writ of mandamus in the event that the district judge denies his motion. *See, e.g., United States v. Towns*, 913 F.2d 434, 443 (7th Cir.1990). A failure to request the writ constitutes a waiver of the recusal argument. *See id.; United States v. Sidener*, 876 F.2d 1334, 1336 (7th Cir.1989).

■ Defendant Franklin never filed a motion for recusal, and, therefore, he has not preserved the issue of recusal for appeal. Defendant Houston filed both a motion for recusal and a motion to adopt all other co-defendants' motions. Had Houston immediately moved for mandamus upon the denial of his motion for recusal, we would have had a timely opportunity to consider his arguments. However, Houston failed to move for mandamus as required by *Towns*, so we are forced to conclude that, for the purposes of his own motion, he has failed to preserve these arguments for appeal.

■ We now turn to the question whether Houston's motion to adopt Robinson's motion for recusal has preserved the issue on appeal. Judge Zagel did not respond to Houston's motion to adopt his co-defendants' motions. Despite the court's silence, Houston never pressed the issue during trial, even though he knew that the recusal motion that he now depends on, Noah Robinson's, was denied long before he moved to adopt it. Houston contends that since Judge Zagel never ruled on his motion, Houston had no duty to move for mandamus and did not waive his right to appeal by failing to pursue Robinson's recusal claim.

There are other ways to waive an argument raised before trial than failure to move for mandamus. The government asks us to consider the waiver doctrine that we established in *United States v. Taglia*, 922 F.2d 413, 416 (7th Cir.1991).

In that case, we concluded that, absent a claim of ineffective assistance of counsel, a defendant's failure to remind the court to rule on a pre-trial motion constituted a waiver. *Id.* "If a motion is not acted upon, a litigant had better renew it. He may not lull the judge into thinking that it has been abandoned and then, after he has lost, pull a rabbit out of his pocket in the form of the forgotten motion." *Id.* Although in *Taglia* we found waiver only of a motion to sever, the rule has been extended to include other types of pre-trial motions. *See United States v. Hoyos,* 3 F.3d 232, 236 (7th Cir.1993) (motion in limine); *United States v. Addo,* 989 F.2d 238, 241–42 (7th Cir.1993) (motion in limine); *United States v. Wilson,* 962 F.2d 621, 625 (7th Cir.1992) (motion to suppress).

■ A defendant waives a motion under the logic of *Taglia* if he fails to renew a motion made pre-trial that has not been ruled upon. If a defendant has an opportunity to renew the motion and chooses not to, the specter of "sand bagging" lurks behind his actions. We may refuse to review motions appealed in this fashion because they encourage parties to cache unanswered motions and, by so doing, disrupt the efficient function of the judicial process. When Houston's own motion for recusal was denied, he had to be aware that the motion to adopt had not been addressed. At that time, the Robinson motion on which he now relies had been denied one and a half years earlier. Houston cannot have expected to gain anything at trial by adopting a motion that had been previously denied. In addition, when Robinson's motion was filed, Houston's case was still severed from Robinson's (although the two cases had been joined by the time Judge Zagel ruled on it). For these reasons, Judge Zagel may not have understood that the motion was meant to include Robinson's motion for recusal. In that case, Judge Zagel may have found the motion to be pointless, because Houston's codefendant, Franklin, had not filed any pre-trial motions.

■ All speculation aside, when his other motion was denied, Houston realized or should have realized that Judge Zagel would not rule on his motion. At that time, Houston had sufficient opportunity to renew the motion and address the recusal issue. Houston attempts to rely on his forgotten motion to support a recusal claim that he made before the district court and had denied. We find that *Taglia* controls, and Houston's waiver of these arguments allows us to review the merits of the § 455(a) and § 144 claims only for plain error. *See United States v. Ramusack,* 928 F.2d 780, 784 (7th Cir.1991). The plain error doctrine allows us "to correct only 'particularly egregious errors' for the purposes of preventing a miscarriage of justice." *United States v. Marvin,* 135 F.3d 1129, 1135 (7th Cir.1998). We find no such particularly egregious errors here and no clear error in Judge Zagel's determination not to recuse himself.

## B. Tape Duplication

■ Houston and Franklin also argue that their convictions must be overturned because they were substantially based upon evidence presented in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* They contend that the government's use of a commercial duplicating service to duplicate tapes of wiretap evidence violates the prohibition against unauthorized disclosure of wiretap evidence. *See United States v. Dorfman,* 690 F.2d 1230, 1232 (7th Cir.1982).

■ At trial, Houston and Franklin objected to the admission of wiretap evidence on the ground that the use of a commercial copying service violated the chain of custody for the tape recordings. Defendants did not argue that the government failed to meet the disclosure requirements of 18 U.S.C. § 2517. When a defendant fails to object in a timely fashion to the admission of evidence at trial, the defendant forfeits the issue absent a showing of plain error.

*See United States v. Vest*, 116 F.3d 1179, 1185 (7th Cir.1997). Failing to raise their objection to the government's disclosure made it impossible for the trial court to develop a factual record from which we could determine whether the use of a commercial duplicating service actually led to a disclosure of evidence, which is the preliminary inquiry that we must make for a claim that the government violated § 2517. To show plain error, the defendants must demonstrate either that the error affected their substantive rights (for example, by altering the outcome at trial) or that the error seriously affected the fairness, integrity or public reputation of the judicial proceeding. *See id.* Defendants fail to present any evidence that any error in disclosure could have produced such grave effects, and given the cumulative nature of the evidence presented against them, we doubt that such a drastic change would have occurred. We find no plain error in the district court's decision not to exclude the wiretap evidence on the ground that the contents of the wiretap recordings may have been disclosed during duplication.

### III. CONCLUSION

· Defendant Franklin failed to raise before the district court either of the issues that he now appeals. Defendant Houston raised the issue of recusal before the district court, but he failed to pursue it in the proper fashion. Since we find that the defendants failed to preserve either the issue of recusal or the issue of improper disclosure for appellate review, we AFFIRM the decisions of the district court.