In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4033

United States of America,

Plaintiff-Appellee,

v.

David A. Ruzzano,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 84 CR 610--Suzanne B. Conlon, Judge.


Argued October 26, 2000--Decided April 4, 2001


  Before Easterbrook, Kanne, and Evans, Circuit Judges.

  Kanne, Circuit Judge.  On August 9, 1984, a grand
jury in the Northern District of Illinois
returned a sixteen count indictment against David
A. Ruzzano. Counts fifteen and sixteen, at issue
here, charged Ruzzano with tax evasion in
violation of 26 U.S.C. sec. 7201 in the amount of
$313,000 and $236,000 for the years of 1979 and
1980 respectively. The indictment was the result
of an investigation into Ruzzano's participation
in an oil swindle in which he allegedly promised
investors substantial profits on investments in
oil producing corporations that did not actually
produce oil. At the time of the indictment,
Ruzzano was not present in the United States, and
his location abroad was unknown.

  Ruzzano, who left the country in 1980, claims
that he first learned of the criminal charges
pending against him in 1985 when he entered the
American Embassy in the Netherlands to renew his
passport. At the request of the United States,
Dutch authorities provisionally arrested Ruzzano,
but they later released him on bond pending
extradition. By the time U.S. Marshals had
arrived to bring Ruzzano back to the United
States, he had disappeared. Ruzzano's whereabouts
remained unknown until he was discovered in the
French Carribean on St. Martin in 1995. The
French detained him for six months, but he was
never arrested. After his release from French

custody, Ruzzano's whereabouts again became unknown to U.S. authorities until three years later when Ruzzano presented himself to the American Embassy in Lisbon, Portugal. He told the authorities there that he wanted to clear up the criminal charges pending against him. Eight months later--nearly fifteen years after he was indicted--Ruzzano was extradited to the United States.

Upon his return to the United States, Ruzzano entered an agreement with the government in which he pleaded guilty to two counts of tax evasion. In the plea agreement, Ruzzano acknowledged that he wilfully and knowingly attempted to evade the income tax due and owing to the United States of America by keeping improper records, failing to report income derived from a substantial number of cash transactions, and by failing to file income tax returns with the Internal Revenue Service for the calendar years of 1979 and 1980.

District Court Judge Suzanne B. Conlon conducted a guidelines-type sentencing hearing although none was required inasmuch as this was to be a pre-guidelines sentence. Before sentencing, both Ruzzano and the government submitted their own versions of Ruzzano's offense. Ruzzano also submitted a position paper for sentencing in which he asked the court to consider the fact that he ultimately turned himself in. The position paper also took issue with a number of the government's characterizations of his actions. In the position paper, Ruzzano claimed that he never intended to defraud anyone. Instead, he contended that his legal troubles were the result of "dreamy expectations and reckless bookkeeping." The position paper also disputed the government's characterization of Ruzzano's initial departure from the United States as an attempt to evade the law. Although he did not deny that "he was a fugitive from justice for many years," Ruzzano maintained that he initially left the country not to evade the authorities but solely to avoid the effects of the recently enacted windfall profits tax. In support of this assertion, the position paper pointed out that no criminal charges were pending against Ruzzano when he left the country.

At sentencing, Ruzzano's counsel repeated many of the same arguments made in the position paper. Ruzzano's attorneys emphasized the fact that Ruzzano, while once a fugitive, did ultimately decide to turn himself in and accept responsibility for his actions. Counsel also asked the court to take into account certain mitigating factors including contriteness, exemplary military service, chronic health problems, and time spent in "horrifying

conditions" in a Portugese prison. In response, the government argued that Ruzzano's attempts to avoid apprehension should aggravate his sentence. Noting that he would be sentenced under the pre-guidelines sentencing regime in which defendants serve less of their sentence than under the guidelines, the government recommended that Ruzzano be sentenced to the maximum term of imprisonment--five years per count. The district court agreed. The court stated that the fact that Ruzzano ultimately turned himself in to the authorities some fifteen years after he was indicted was not enough to show acceptance of responsibility. Consistent with the government's recommendation, the district court then imposed the maximum allowable sentence: five years for each count, the terms to run consecutively, for a total of ten years imprisonment.

Ruzzano raises three issues on appeal. First, he claims that the district judge should have recused herself pursuant to 28 U.S.C. sec.sec. 455(a) and 455(b)(3). Next, Ruzzano contends that his counsel failed to provide effective assistance at sentencing. Lastly, he claims that the district court abused its discretion in sentencing by overlooking evidence of remorse, contrition, acceptance of responsibility, and other mitigating factors.

I.   Analysis
A.   sec. 455 Claims

Ruzzano argues that Judge Conlon should have recused herself from his case pursuant to 28 U.S.C. sec.sec. 455(a) and 455(b)(3). His claim, never presented to Judge Conlon and raised for the first time on appeal, is based on the fact that Judge Conlon served as an Assistant United States' Attorney (AUSA) in the U.S. Attorney's Office for the Northern District of Illinois at the same time that Ruzzano was indicted by a grand jury in that district. At the outset, we note that we do not know whether Judge Conlon played any role in or was even aware of Ruzzano's indictment during her time in the U.S. Attorney's Office. While it is undisputed that her name does not appear on any of the documents related to the case, Ruzzano argues that Judge Conlon may have provided assistance or expressed an opinion about his case to a fellow AUSA.

Ruzzano sent a Freedom of Information Act (FOIA) request to the Department of Justice asking for information relating to Judge Conlon's involvement with his case, but he did not receive a response. Although the government's failure to respond to the FOIA request does concern us, we find it highly unlikely that the U.S. Attorney's Office keeps a record of every time one AUSA

sticks his head into another AUSA's office to ask her a question about a pending case. Almost certainly, the sole person who knows whether Judge Conlon may have expressed an opinion on the merits of the defendant's case is Judge Conlon herself. Had Ruzzano raised this issue in the district court, we would now have the benefit of Judge Conlon's response.

1.  Ruzzano's sec. 455(a) Claim.

28 U.S.C. sec. 455(a) provides that a judge must disqualify herself "in any proceeding in which h[er] impartiality might reasonably be questioned." In this circuit, appellate review of a judge's failure to disqualify herself under sec. 455(a) may only be obtained by petitioning the appellate court for a writ of mandamus prior to trial. See United States v. Horton, 98 F.3d 313, 316-17 (7th Cir. 1996); United States v. Balistrieri, 779 F.2d 1191, 1205 (7th Cir. 1985). Our cases have reasoned that

"[i]t is a fundamental principle of appellate review that unless an error affects the substantial rights of the appellant, it is not a basis for reversal. . . . [I]f a judge proceeds in a case when there is (only) an appearance of impropriety in his doing so, the injury is to the judicial system as a whole and not to the substantial rights of the parties. The parties receive a fair trial, even though a reasonable member of the public might be in doubt as to its fairness, because of misleading appearances." Once the proceedings in the district court are complete, the harm sought to be avoided by the requirement of recusal for appearance of impropriety has been done--the public image of the judiciary has already been damaged.

United States v. Troxell, 887 F.2d 830, 833 (7th Cir. 1989) (quoting Balistrieri, 779 F.2d at 1204-05; other citations omitted). While we recognize that this is a minority position, see United States v. Boyd, 208 F.3d 638, 650 (7th Cir. 2000) (Ripple, J. dissenting) (arguing that this circuit's requirement of mandamus is in "considerable tension" with the Supreme Court's decisions in Liteky v. United States, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994), and Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988)), cert. granted in part and judgment vacated on other grounds by 2001 WL 137610 (U.S. Feb. 20, 2001) (No. 00-6674), it remains the law in this circuit. See id. at 645.

However, in this case the issue is not Ruzzano's failure to petition for a writ of mandamus, but rather his failure to raise the

issue before the district court at all. Because a party waives his sec. 455(a) recusal argument by failing to petition for a writ of mandamus, it follows that he also waives it by failing altogether to raise it at the district court level. See United States v. Franklin, 197 F.3d 266, 269 (7th Cir. 1999). Moreover, although we are the only circuit to require parties to petition for a writ of mandamus in order to preserve recusal challenges, we are not alone in requiring a party to raise recusal issues at the trial level. Several circuits that do entertain sec. 455(a) claims on direct appeal have also found waiver when a party failed to raise the issue before the district court. See United States v. Mathison, 157 F.3d 541, 545-46 (8th Cir. 1998); United States v. Barrett, 111 F.3d 947, 952-53 (D.C. Cir. 1997). Ruzzano argues that his case is distinguishable from cases that have found waiver because he did not find out that Judge Conlon was an AUSA until after he was sentenced. While we do not foreclose the possibility that exceptional circumstances might excuse a failure to seek recusal in a timely manner, we do not believe that Ruzzano has shown such a circumstance. Far from being a secret, the time Judge Conlon spent in the U.S. Attorney's Office is a matter of public record. Therefore, Ruzzano has waived his sec. 455(a) claim by failing to raise it before the trial court. In any event, the fact that a judge was an AUSA during the prosecution, standing alone, does not require recusal under sec. 455(a). See United States v. Di Pasquale, 864 F.2d 271, 279 (3rd Cir. 1988).

2. Ruzzano's sec. 455(b)(3) Claim

Ruzzano next argues that the district judge erred by not disqualifying herself pursuant to 28 U.S.C. sec. 455(b)(3). Like his sec. 455(a) claim, Ruzzano did not request recusal in the district court under sec. 455(b)(3) and thus raises this issue for the first time on appeal. Our cases have not directly addressed the issue of whether we may review a sec. 455(b) claim raised for the first time on appeal where the appellant did not move for recusal below. See United States v. Smith, 210 F.3d 760, 764 (7th Cir. 2000). It seems, however, that our rationale for requiring a party to petition for a writ of mandamus in order to preserve a sec. 455(a) claim does not apply with equal force to sec. 455 (b)(3) claims. We require the parties to petition for a writ of mandamus for sec. 455(a) claims because the injury we are seeking to prevent is not an injury to an individual party, but rather to the judicial system as a whole. In the case of a meritorious sec. 455(b) claim, where the judge actually did participate in the earlier

proceeding in some manner, it is more likely that the substantial rights of the individual party have actually been implicated. Therefore, although mandamus is the preferred route, we will review sec. 455(b)(3) claims notwithstanding the failure to petition for a writ of mandamus. But, because Ruzzano did not raise his sec. 455(b)(3) claim before the district court, we will only review for plain error. See Smith, 210 F.3d at 764; United States v. Ramusack, 928 F.2d 780, 784 (7th Cir. 1991).

Section 455(b)(3) provides that a judge must recuse herself "[w]here [s]he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." Id. As applied to judges who were formerly AUSAs, sec. 455(b)(3) requires some level of actual participation in a case to trigger disqualification. See Boyd, 208 F.3d at 647; Mangum v. Hargett, 67 F.3d 80, 83 (5th Cir. 1995) (holding that sec. 455(b)(3) does not require recusal "unless the former government attorney has actually participated in some fashion in the proceedings"); Kendrick v. Carlson, 995 F.2d 1440, 1444 (8th Cir. 1993); United States v. Di Pasquale, 864 F.2d 271, 279 (3rd Cir. 1988) (finding that sec. 455(b)(3) does not mandate recusal "absent a specific showing that that judge was previously involved with a case while in the U.S. Attorney's Office."); cf., United States v. Pepper & Potter, Inc., 677 F. Supp. 123, 126 (E.D.N.Y. 1988) (recusal required when judge was the U.S. Attorney at the time of the indictment and involvement "was not merely of a pro forma nature"). Even an AUSA who occupied a supervisory position in the U.S. Attorney's Office during the prosecution is not later required to recuse herself solely on that basis. See Boyd, 208 F.3d at 647 (stating that "the requisite 'participation' is not imputed to a supervisor by virtue of his supervisory authority; it must be personal"). Although there is an exception to the requirement of actual participation for a judge who was formerly the U.S. Attorney, see id. at 648, this exception is not applicable here.

In order to show plain error, Ruzzano must show that Judge Conlon's participation in the disposition of the case was an obvious or clear error and that it affected his substantial rights. See United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Of course, to begin with, Ruzzano did not alert Judge Conlon to any potential conflict. To date, Ruzzano has not presented any evidence that Judge Conlon participated in his case in any fashion.

It is undisputed that Judge Conlon's name does not appear on any documents relating to the case. While there is a theoretical possibility that Judge Conlon did express her opinion about the merits of Ruzzano's case, without some actual evidence of that fact we will not find that she erred in handling the case. Therefore, we find that Judge Conlon did not commit plain error when she imposed sentence on Ruzzano even though she had been an AUSA at the time of his indictment.

## B.  Ineffective Assistance of Counsel Claim

Ruzzano next claims that he was denied effective assistance of counsel in violation of the Sixth Amendment because his counsel failed to move for recusal of the district judge and did not object to the government's characterization of Ruzzano as a fleeing felon. Generally, we are reluctant to hear ineffective assistance of counsel claims on direct appeal. See United States v. Hall, 212 F.3d 1016, 1021 (7th Cir. 2000). Nevertheless, whether counsel has rendered constitutionally ineffective assistance is a mixed question of law and fact, and we review de novo. See United States v. Shukri, 207 F.3d 412, 418 (7th Cir. 2000).

Because we begin with a strong presumption that counsel's conduct falls within the wide range of acceptable professional assistance, see Long v. Krenke, 138 F.3d 1160, 1163 (7th Cir. 1998), Ruzzano faces a heavy burden in making out a winning ineffective assistance of counsel claim. See Hall, 212 F.3d at 1021 (citing United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995)); see also United States v. Williams, 106 F.3d 1362, 1367 (7th Cir. 1997) (noting that the Strickland test is highly deferential to counsel). To prevail, Ruzzano must show that: (1) his attorney's performance fell below objective standards for reasonably effective representation; and (2) the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

## 1.  Failure to Move For Recusal of the District Judge Under sec. 455(a) or sec. 455(b)(3)

As one basis for his ineffective assistance of counsel claim, Ruzzano cites to his counsel's failure to move for the recusal of the district judge. Because we do not know whether Judge Conlon played any role in Ruzzano's indictment, or whether Ruzzano's counsel ever investigated that possibility, it would be difficult to determine on direct appeal whether counsel's performance fell below an objective standard of

effective representation. It is unnecessary, however, for us to make such a determination because we are not required to make a finding as to the performance prong of the Strickland test before we examine the prejudice prong. See United States v. Depoister, 116 F.3d 292, 295 (7th Cir. 1997).

Ruzzano's attempt to show that he was prejudiced by counsel's failure to move for the recusal of Judge Conlon falls short. In order to show prejudice, a defendant must show a reasonable probability that, if not for counsel's unprofessional errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. A showing that counsel's errors had "some conceivable effect on the outcome of the proceeding" is not sufficient to demonstrate prejudice. Long, 138 F.3d at 1163. Although we are mindful of the Supreme Court's recent admonition that any amount of additional time in prison can constitute prejudice, see Glover v. United States, 121 S. Ct. 696, 700 (2001), Ruzzano has not shown a reasonable probability that he received additional prison time because of counsel's error. Even if Judge Conlon had not been involved, Ruzzano can not show a reasonable probability that another judge would have issued a lesser sentence. In deciding whether a particular error prejudiced the defendant, "a court should presume . . . that the judge or jury acted according to law." Strickland, 466 U.S. at 695. There is nothing in the record to challenge this presumption; to the contrary, it appears that Judge Conlon issued a fair, well-considered sentence.

The prejudice inquiry revolves around the question of whether counsel's deficient performance renders the proceeding fundamentally unfair. See Foster v. Schomig, 223 F.3d 626, 636 (7th Cir. 2000). Here, Ruzzano has not demonstrated that his counsel's failure to move for the recusal of Judge Conlon rendered his sentencing fundamentally unfair. At best, he has shown a possibility that a different judge would have handed down a different sentence. This falls short of the required showing of a reasonable probability that the sentence would have been different. See Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997) (stating that "[t]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong").

2. Failure to Object to the Government's Characterization of Ruzzano as a Fleeing Felon

Ruzzano also claims that he was denied effective assistance of counsel because the

government erroneously portrayed him as a fleeing felon in the government's version of the offense and at sentencing, and his counsel failed to object. Specifically, Ruzzano argues that his counsel erred by: (1) admitting at sentencing that Ruzzano had been a fugitive; and by (2) failing to object to the false impression given by the Pre-Sentence Investigation Report (PSI) that Ruzzano "knowingly fled the United States to escape prosecution." We disagree. First, it is clear that Ruzzano's attorney did try and correct the government's characterization of Ruzzano as a fugitive from justice. In defendant's position paper for sentencing, Ruzzano's counsel pointed out that Ruzzano left the country well before he was indicted. It also maintained that Ruzzano did not know that he was under federal criminal investigation when he left the United States. According to the position paper, Ruzzano left the country not to avoid criminal charges but because newly enacted tax laws destroyed his business opportunities in the United States. The fact that the district court did not accept the interpretation of Ruzzano's behavior urged by Ruzzano's counsel does not give rise to an ineffective assistance of counsel claim.

Given the circumstances surrounding Ruzzano's extradition, Ruzzano would not be able to show that counsel's performance fell below an objectively reasonable standard even if his counsel had failed to object to the characterization of Ruzzano as a fleeing felon. As we have already noted, "[t]he Strickland test is 'highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices.'" Shukri, 207 F.3d at 418 (quoting United States v. Williams, 106 F.3d 1362, 1367 (7th Cir. 1997)). The decision by Ruzzano's counsel to admit that Ruzzano was a fugitive at one point but to focus on his ultimate decision to turn himself in was a reasonable tactical decision given the length of time that Ruzzano spent overseas after he knew of the charges against him. Similarly, counsel's failure to object to the contents of the PSI was reasonable under the circumstances because the PSI did not even take a position on the issue that Ruzzano disputes most vigorously--whether Ruzzano fled the country to escape prosecution. The PSI did, in discussing the series of events that led to Ruzzano's extradition, note that Ruzzano's whereabouts were unknown to the United States authorities at various times, but failure to object to this portion of the PSI, far from showing a sub-par performance by counsel, was most likely the wisest course of action. Therefore, we decline to second-guess Ruzzano's counsel's strategic decisions about how to best frame the time Ruzzano spent overseas.

C.  Sentencing Claims

   Ruzzano's last claim is that the district court abused its discretion by relying on erroneous information and failing to take mitigating factors into consideration during sentencing./1 As we have repeatedly noted, our review of pre-guidelines sentences is extremely limited. See United States v. Stevenson, 942 F.2d 1111, 1116 (7th Cir. 1991); United States v. Johnson, 903 F.2d 1084, 1089 (7th Cir. 1990). Sentences which fall within the statutory limits will only be reversed if the district court relied on improper information or failed to exercise discretion. See Johnson, 903 F.2d at 1089. Here, Ruzzano argues that the district court erroneously relied on dismissed counts of the indictment as well as the government's characterization of him as a fleeing felon. Ruzzano's first argument finds no support in the record. Although the district court did refer to Ruzzano's investors as "victims," this was not improper because Ruzzano admitted committing fraud in the plea agreement. "In pre-Guideline cases, the sentencing court may consider the defendant's background, character, and conduct. Indeed, there is 'little limit on the type of information the district court can consider in sentencing.'" Stevenson, 942 F.2d at 1116 (quoting United States v. Marshall, 719 F.2d 887, 891 (7th Cir. 1983)). Similarly, Ruzzano can not show that the district court abused its discretion by agreeing with the government's conclusion that Ruzzano was a fugitive from justice. Even if we accept Ruzzano's claim that he had no idea that he was under criminal investigation when he left the United States, he was surely aware of the charges against him by 1985. Thus, the district court's determination that Ruzzano was a fugitive from justice during the thirteen years that Ruzzano spent overseas after learning of the charges against him is clearly not an abuse of discretion.

   Lastly, Ruzzano claims that the district court erred in imposing his sentence because it failed to consider mitigating factors such as his remorse, acceptance of responsibility, bad health, and time spent in "horrifying conditions" in a Portugese prison. Ruzzano's argument ignores the fact that judges are entitled to determine what weight to give mitigating factors, see United States v. Perez, 858 F.2d 1272, 1276 (7th Cir. 1988), and we will not upset such a determination absent evidence that the sentencing judge utterly failed to exercise discretion. See United States v. Harris, 761 F.2d 394, 402-03 (7th Cir. 1985). It is clear in this case that the district court did exercise discretion to consider possible mitigating factors. The district court heard arguments from two of

Ruzzano's attorneys in mitigation, asked Ruzzano for a statement on his own behalf, and specifically stated that it had read and considered the defendant's position paper for sentencing. We will not find an abuse of discretion where, as here, the defendant merely disagrees with the weight that the district judge assigned to various mitigating factors.

## II.  Conclusion

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

/1 Ruzzano also argues that his sentence is unduly harsh because he would have received a lighter sentence under the sentencing guidelines. The appropriate punishment under the sentencing guidelines is not relevant here, however, because Ruzzano committed his crimes in 1979 and 1980 and the guidelines do not apply to offenses that occurred before November 1, 1987. See United States v. Johnson, 903 F.2d 1084, 1092 (7th Cir. 1990) ("[I]t is irrelevant that had this been a Guidelines case, the defendants might have received lighter sentences.").