**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jeffrey H. FARRINGTON,**
**Defendant–Appellant.**

**No. 00–4241, 00–4242.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 3, 2001.

Decided Nov. 16, 2001.

Before BAUER, COFFEY, DIANE P. WOOD, Circuit Judges.

### ORDER

Jeffrey H. Farrington pleaded guilty to four counts of bank robbery in violation of 18 U.S.C. § 2113(a). The district court sentenced him to four concurrent terms of 127 months' incarceration and three years' supervised release, and also ordered him to pay $175,075 in restitution to four victim banks. On appeal Farrington argues under 28 U.S.C. § 455(a) that he should be resentenced because the district judge owned stock in one of the banks. We affirm.

### Background

In July 2000 Tomah, Wisconsin police arrested Farrington for car theft. On July 10, 2000, Farrington confessed to committing four bank robberies (two in Minnesota, two in Wisconsin) from January to June 2000. Farrington robbed each of the banks by threatening to detonate hoax bombs.

On July 20, 2000, a grand jury returned a two-count indictment in the Western District of Wisconsin charging Farrington with robbing the First Federal Bank in Wisconsin Rapids, Wisconsin and the M & I Bank in Wausau, Wisconsin in violation of § 2113(a). On August 1, 2000, a grand jury returned a two-count indictment in

the District of Minnesota charging him with robbing the Norwest Bank in Albert Lea, Minnesota and the Merchants National Bank in Rochester, Minnesota in violation of § 2113(a). On September 21, 2000, Farrington pleaded guilty to both Wisconsin counts. He also agreed to have the Minnesota charges transferred to Wisconsin and then pleaded guilty to those counts.

The case then proceeded to sentencing. The probation officer determined Farrington's offense level to be 28, his criminal history category to be 4, and his guideline imprisonment range to be 110–137 months. Neither Farrington nor the government objected to the presentence investigation report. On November 30, 2000, Judge Shabaz sentenced Farrington to four concurrent terms of 137 months' incarceration, three years' supervised release, and ordered him to pay $175,075 in restitution. That same day the court docketed the final judgment.

On December 14, Farrington, acting pro se, filed a notice of appeal and a request to proceed in forma pauperis. The next day the district court denied his request to proceed in forma pauperis because his appeal was untimely under Federal Rule of Appellate Procedure 4(b)(1), which allows criminal defendants ten days to appeal. On December 21, this court ordered Farrington to file a memorandum by January 4, 2001, stating why his untimely appeal should not be dismissed for lack of jurisdiction. The order also stated that Farrington could file a motion for additional time to appeal with the district court. Six days later Farrington filed a motion with the district court to extend the time to appeal.

On January 3, 2001, one day before this court's deadline to submit a jurisdictional memorandum, Farrington's counsel filed with this court a motion to withdraw. On January 26, this court granted the motion and appointed new counsel to represent Farrington. On February 16, Farrington, now represented by a different lawyer, filed a new motion with the district court to extend the time to appeal under Rule 4(b). Four days later the district court granted Farrington's motion, giving him until March 5 to file his notice of appeal. He filed his notice of appeal on March 5.

The next day the district court issued an order construing Farrington's notice of appeal as a request to proceed in forma pauperis on appeal. The court denied the request because the notice did not state the issues he wished to raise on appeal. Judge Shabaz, however, also disclosed that he owned stock in the parent of one of the victim banks: "Retrospectively, the undersigned may have been required in Case No. 00–CR–85–S–01 to disclose that from July 11, 2000, to February 15, 2001, he owned 366 shares of stock in Wells Fargo Bank." (App.15.) The Norwest Bank, one of the banks robbed by Farrington, is owned by Wells Fargo.

### Discussion

On appeal Farrington argues for the first time that Judge Shabaz should have recused himself under § 455(a) because his stock ownership in Wells Fargo may have undermined his impartiality. Accordingly, he contends that the case should be remanded for resentencing by a different judge.

### I. Jurisdiction

The government argues that we do not have jurisdiction over Farrington's appeal because he did not file a petition for a writ of mandamus before the district court. Farrington seeks recusal under § 455(a), which provides that judges must disqualify themselves in any proceeding in which their impartiality might reasonably be questioned. 28 U.S.C. § 455(a). In this

circuit, appellate review of judges' failure to disqualify themselves under § 455(a) may be obtained only by petitioning the appellate court for a writ of mandamus prior to trial. *United States v. Ruzzano,* 247 F.3d 688, 694 (7th Cir.2001).

This circuit requires parties to seek mandamus while the case is pending before the district court because § 455(a) violations harm the legal process itself rather than the parties. Unless an error committed during a criminal adjudication affects the substantial rights of an appellant, it is not a basis for reversal on direct appeal. *United States v. Troxell,* 887 F.2d 830, 833 (7th Cir.1989). Judges who proceed in a case when there is only the *appearance* of impropriety injure the judicial system as a whole and not the substantial rights of the parties. *Id.* The parties receive a fair adjudication, even though a reasonable member of the public might be in doubt as to its fairness because of misleading appearances. *Id.* Once the district court proceedings are complete, the harm sought to be avoided (the appearance of impropriety) has already been inflicted in the form of damages to the public image of the judiciary. *Id.* Thus, parties must act promptly in seeking a writ of mandamus to avoid that harm at the outset rather than wait until judgment has been entered. *Id.; but see United States v. Boyd,* 208 F.3d 638, 650 (Ripple, J., dissenting) (urging this circuit to join every other circuit in permitting appellate review of a failure to recuse under § 455(a)).

■ Parties who fail to petition for a writ of mandamus while the case is pending before the district court waive the right to request recusal under § 455(a). *Ruzzano,* 247 F.3d at 694; *see also United States v. Mathison,* 157 F.3d 541, 545–46 (8th Cir.1998); *United States v. Barrett,* 111 F.3d 947, 952–53 (D.C.Cir.1997). Even though Farrington did not seek recu-

sal before the district court, he did not "waive" the issue because he did not learn until three months after sentencing that the district court owned Wells Fargo stock during the adjudication of his case. *See United States v. Walton,* 255 F.3d 437, 441 (7th Cir.2001) (holding that "waiver" is an intentional choice not to assert a right).

This court has twice confronted factual scenarios in which the defendant learned of the factual basis for recusal after trial. In *United States v. Ward,* 211 F.3d 356, 364 (7th Cir.2000), defendant Ward argued that the district judge should have recused himself under § 455(a) because the judge's son, a lawyer, was involved in the criminal prosecution of Ward's fellow gang member. Ward did not learn of the son's involvement in the other case until after his conviction, before sentencing. *Id.* The government, citing *Troxell, United States v. Bond,* 847 F.2d 1233, 1241 (7th Cir. 1988), and *United States v. Balistrieri,* 779 F.2d 1191, 1204–05 (7th Cir.1985), argued on appeal that Ward had waived his § 455(a) claim because he failed to pursue it prior to trial. *Id.* The *Ward* court declined to decide the waiver issue because his recusal claim failed on its merits. The court, however, did label the application of the cases cited by the government "debatable because, given the sequence of events ... it is clear that Ward did not discover the information upon which he based his motion for recusal until after his trial was concluded." *Id.*

In *Ruzzano,* the defendant claimed for the first time on appeal that Judge Conlon should have recused herself under § 455(a) because she served as an Assistant United States' Attorney at the same time that (and in the same district in which) a grand jury indicted the defendant. *Ruzzano,* 247 F.3d at 693. The defendant did not petition for a writ of mandamus but raised the issue for the first time on appeal after

discovering that Judge Conlon was an AUSA. *Id.* at 693–94. The *Ruzzano* court held that the defendant waived the issue because Judge Conlon's tenure in the U.S. Attorney's office was a matter of public record. *Id.* at 694. The *Ruzzano* court acknowledged, however, that appellate review may be appropriate in some cases: "[w]hile we do not foreclose the possibility that exceptional circumstances might excuse a failure to seek recusal in a timely manner, we do not believe that Ruzzano has shown such a circumstance." *Id.* The *Ruzzano* court did not specify any special circumstances that might warrant appellate review.

■ Contrary to the government's position, we conclude that this case presents "special circumstances" that confer this court with appellate jurisdiction. Unlike *Ruzzano*, in which Judge Conlon's service with the U.S. Attorney's office was a matter of public record, Farrington could not have known of Judge Shabaz's interest in the case. Although federal judges must submit financial disclosure forms detailing their financial holdings (including stock ownership), Judge Shabaz's interest in Wells Fargo would not have been disclosed. He acquired the stock in July 2000, well after the due-date for his 2000 financial disclosure, and sold the stock in February 2001, before his 2001 disclosure was due. Moreover, the clerk's office for the Western District of Wisconsin does not maintain the disclosure forms of judicial officers in its files. Thus, no amount of diligence on the part of Farrington would have uncovered Judge Shabaz's interest in Wells Fargo.

■ The government suggests that Farrington should be required to file a collateral attack under 28 U.S.C. § 2255, as opposed to proceeding on direct appeal. But as the government concedes, this court has never authorized collateral challenges seeking recusal without a charge of actual bias. *See Troxell*, 887 F.2d at 833 (noting that charges of actual bias may be reviewed after conviction). The government also fails to demonstrate why a collateral attack is necessary. Because the government has not pointed to any cases in which this circuit has authorized collateral review under these circumstances, and because additional fact-finding is unnecessary, we will review the merits of Farrington's appeal.

## II. Recusal

Farrington contends that Judge Shabaz should have recused himself because he owned stock in Wells Fargo. Farrington brings his challenge under § 455(a) and not § 455(b)(4), which mandates recusal if a judge or his family has a financial interest in the subject matter in controversy or in a party to the proceeding. No circuit has applied § 455(b)(4) in the context of a judge who owns stock in a victim bank. *See United States v. Nobel*, 696 F.2d 231, 234–35 (3d Cir.1982) (concluding that a judge who owns stock in a victim bank does not have a financial interest in the subject matter of the controversy under § 455(b)(4); thus, § 455(a) is the correct avenue of analysis).

■ "Section 455(a) requires recusal if the judge's impartiality might reasonably be questioned by a 'well-informed, thoughtful observer rather than to a hypersensitive, or unduly suspicious person.'" *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 988 (7th Cir.2001) (internal quotations omitted). This circuit has not addressed whether judges who own stock in a victim bank should automatically recuse themselves from presiding over the criminal trial. Those circuits that have addressed the recusal issue in similar circumstances have not agreed on a steadfast rule, but have instead proceeded on a case-by-case basis. Three circuits-the Sec-

ond, Fourth, and Ninth-have permitted judges who own stock in the victim bank to preside over the criminal trial. *See United States v. Rogers,* 119 F.3d 1377 (9th Cir.1997); *United States v. Sellers,* 566 F.2d 884 (4th Cir.1977); *United States v. Ravich,* 421 F.2d 1196 (2d Cir.1970). On the other hand, the Third Circuit has concluded that a judge who owns a "substantial interest" in the victim of a crime must disqualify himself under § 455(a). *Nobel,* 696 F.2d at 235–36. The *Nobel* court, however, did not define "substantial interest." *See also* Andrew L. Wright, Comment, *Invested in the Outcome: When the Judge Owns Stock in the Victim of a Crime,* 1998 U. Chi. Legal F. 481 (1998) (advocating bright-line approach whereby judges who own stock in victim banks recuse themselves under § 455(a) regardless of amount of stock involved).

Though this circuit has not squarely addressed the issue, the same rationale behind this court's mandamus requirement under § 455(a) leads us to conclude that Farrington cannot demonstrate that his substantial rights have been violated. As this court has noted time and again, the appearance of judicial impropriety under § 455(a) injures the legal system as a whole and not the substantial rights of individual criminal defendants. *See e.g., Troxell,* 887 F.2d at 833. Moreover, there is no evidence suggesting that the district judge's stock ownership had any relevance whatsoever in the proceedings below, let alone that it affected the disposition of his case. Indeed, defense counsel conceded at oral argument that Farrington was not harmed by Judge Shabaz's interest in Wells Fargo. The injury caused by the judge's stock ownership, if any, has already been incurred, and not to Farrington, but to the judicial system as a whole. Farrington therefore cannot demonstrate that his substantial rights have been violated.

Consequently, we AFFIRM the sentences imposed by the district court.