In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-2223

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JESSE A. SMITH,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:08-cr-40067-SLD-JEH-1— **Sara Darrow**, *Judge.*

SUBMITTED DECEMBER 3, 2014 — DECIDED JANUARY 5, 2015

Before POSNER, ROVNER, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge*. In an opinion reported at 770 F.3d 653 (7th Cir. 2014), we considered the appeal of Jesse Smith from a sentence of 15 months in prison imposed on him by Judge Darrow for violating conditions of supervised release. While remarking that the defendant's current profile was not that of a dangerous criminal and expressing doubt about the utility of his continued imprisonment, we indicated that we would have affirmed Judge Darrow's judgment had we not

discovered in the record a document (called a Violation Memorandum), mentioned by neither party, dated February 18, 2011, that had been prepared by the probation service shortly before the defendant had been sentenced by another district judge for an earlier violation of supervised release. The document states that the assistant U.S. attorney handling the revocation case was Sara Darrow, who six months later was confirmed as a federal district judge. The docket sheet in this case states that she had appeared before the judge handling the defendant's first violation on January 7, 2011, for the initial hearing on that alleged violation. There is no indication that she had appeared at any subsequent hearing, or had had any further involvement with the defendant until the present case. One of the government's appellate lawyers noticed the reference on the docket sheet to Darrow's participation in the earlier revocation hearing as an assistant U.S. attorney and asked one of the defendant's lawyers whether he wanted to make an issue of it on appeal. (The issue had not been raised in the district court.) The lawyer declined. We just happened to come across the Violation Memorandum, which is part of the record in this case, and having read it became concerned there might be an issue of recusal.

The hearing at which Judge Darrow sentenced the defendant was held on May 29, 2014. We did not know, when we were considering the defendant's appeal from the sentence, how extensive her participation in the 2011 hearing had been, or whether at the hearing this past May at which she had sentenced the defendant she had had any conscious or unconscious memory of the earlier hearing. We could not exclude the possibility that the sentence had been influenced by a recollection by the judge, perhaps prompted by the de-

fendant's history of violations of supervised release pre-
pared by the probation service, that she had participated in
the defendant's first revocation hearing.

Section 455(b)(3) of the Judicial Code provides that a
judge "shall … disqualify himself ... where he has served in
governmental employment and in such capacity participated
as counsel, adviser or material witness concerning the pro-
ceeding or expressed an opinion concerning the merits of the
particular case in controversy." "Proceeding" is defined to
include "pretrial, trial, appellate review, or other stages of
litigation." 28 U.S.C. § 455(d)(1). For purposes of this case, at
least, "proceeding" includes the entire sequence of the de-
fendant's violations of supervised release, since the judge in
sentencing the defendant relied in part on his earlier viola-
tions.

Because the record in this case was inadequate to enable
us to determine whether Judge Darrow had violated the Ju-
dicial Code, we decided to suspend our decision of the ap-
peal pending receipt from the parties of supplemental briefs,
which we asked them to file, addressing the applicability of
section 455(b)(3) to her participation in this litigation. Those
briefs have now been submitted and the issue of disqualifi-
cation is ripe for resolution.

The government acknowledges that Judge Darrow in-
deed violated the Judicial Code by failing to disqualify her-
self; the language of the statute is clear and clearly applica-
ble to her. The defendant's brief acknowledges his counsel's
"strategic decision" not to complain about the violation on
appeal, but argues that it was only after our opinion on the
merits of the appeal expressed doubt about the severity of
the sentence (while concluding that Judge Darrow had not

committed a reversible error in sentencing the defendant to 15 months in prison) that it occurred to counsel that the judge might have been influenced, consciously or unconsciously, by her earlier prosecutorial involvement with the defendant. Ordinarily a decision not to raise an issue is a waiver, barring further judicial review. However, a ground for disqualification that is specified in 28 U.S.C. § 455(b)— and the possible ground in this case is, as we noted, specified in section 455(b)(3)—cannot be waived. 28 U.S.C. § 455(e).

The government acknowledges as we said the judge's statutory violation but argues that it was harmless—that her involvement in the case as a prosecutor "was minimal": "she appeared only once, and her appearance then was strictly *pro forma*; it involved virtually no substantive decision-making. At most, she requested temporary detention pending a detention hearing, which she did not handle." But the government does not indicate the source for its description of her involvement. The revocation hearing in which she participated occurred four years ago. There appears to be no written record of what she did or said or heard during the hearing, and the government has not told us whose memory it's relying on in telling us that her participation "was strictly *pro forma*."

Tellingly, the government does not say that AUSA Darrow did not discuss the case with other members of the U.S. Attorney's office. For all we know, in preparation for the hearing she discussed the defendant and his misdeeds at length with other members of the office. And the government's statement that her appearance at the hearing was "strictly *pro forma*" is false. The docket sheet states that at the

hearing the government in the person of AUSA Darrow asked the judge to jail the defendant pending a further hearing on the charge of violating supervised release. There was nothing *pro forma* about that. And the government does not *really* believe that her participation was *pro forma*, for if it were there would be no violation of section 455(b)(3), *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2011)—yet the government concedes the violation.

Later of course the defendant committed additional violations of supervised release, winding up in front of Judge Darrow. In imposing a 15-month sentence she commented on the defendant's history of noncompliance with conditions of supervised release, and on the disappointment that she was experiencing on behalf of her predecessor, Judge McDade, who had given Smith various breaks during his appearances before him on charges of violating supervised release.

So we have a situation in which a prosecutor who advocates against a particular defendant later sentences him to prison, albeit for subsequent though related violations— sufficiently related that she referred to the prior violations as influencing the sentence she imposed. One might say that the judge was finishing the work of the prosecutor she had been. Judge Darrow has said nothing about her participation as a prosecutor in that earlier proceeding against the defendant, however, and we do not suggest that she remembered it. But the possibility that a conscious or (more likely, we think) an unconscious recollection influenced the sentence she imposed cannot be excluded. The defendant had been accused of a more serious violation of supervised release in the earlier hearing, had been treated leniently by the

judge, yet had continued violating supervised release, and the possibility that this history exerted an influence on the current sentence cannot be rejected on the basis of the government's casual assertions. A "risk of undermining the public's confidence in the judicial process"—a proper consideration when deciding on the appropriate remedy for a violation of the Judicial Code, see *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988)—is present. In order, therefore, to dispel any possibility of an injustice stemming from the judge's violation of the Code, we have decided to vacate the judgment and remand for a do-over of the sentencing proceeding before a different district judge.

SO ORDERED.