In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1069

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MIGUEL LARA-UNZUETA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 495— **Samuel Der-Yeghiayan**, *Judge.*

ARGUED OCTOBER 2, 2013 — DECIDED NOVEMBER 19, 2013

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Miguel Lara-Unzueta,[1] a native and
citizen of Mexico, was convicted of one count of illegal reentry

---

[1]  As in our prior decision concerning an appeal by Mr. Lara-Unzueta, *see
United States v. Lara-Unzueta,* No. 04-1954 (7th Cir. May 24, 2005), we refer
to Mr. Lara-Unzueta as "Lara."

in violation of 8 U.S.C. § 1326(a) and (b)(2). The district court sentenced him to 78 months' imprisonment. Lara appeals, arguing that the district judge erred by failing to disqualify himself from hearing Lara's motion to dismiss the indictment and that this failure requires vacating the conviction and sentence and remanding to a new judge. Alternatively, Lara argues that the district court erred in failing to dismiss the indictment because Lara was erroneously denied the opportunity to seek discretionary relief from deportation under the Immigration and Nationality Act ("INA") § 212(c) in his first deportation proceeding in 1997–1998.[2] Consequently, he argues that his conviction and sentence should be vacated and this case should be remanded for an evidentiary hearing regarding the likelihood of obtaining relief under INA § 212(c). We hold that the district judge was not disqualified from ruling on Lara's motion to dismiss the indictment. We do not reach the question of whether our circuit's precedents interpreting 8 U.S.C. §1326(d) foreclose Lara's collateral attack on his underlying deportation order because his counsel concedes the issue. For the reasons that follow, we affirm Lara's conviction and sentence.

---

[2]    The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") took effect on April 1, 1997, and ceased utilizing the word "deport" and its derivations. *See United States v. Zambrano-Reyes,* 724 F.3d 761, 762 (7th Cir. 2013). Because this case implicates official action taken before and after that date, including the frequent citation of court orders utilizing derivations of the word "deport," we use it and "removal" interchangeably throughout this opinion.

## I.

## BACKGROUND

Miguel Lara-Unzueta was born in Mexico on August 13, 1977. He became a temporary resident alien in 1988 and a permanent resident alien in 1990. On March 1, 1996, following a guilty plea, he was convicted in the Circuit Court of Cook County of attempted first degree murder in violation of 720 Ill. Comp. Stat. 5/8-4 and 5/9-1(a)(1) and of armed violence in violation of 720 Ill. Comp. Stat. 5/33A-2. He was sentenced to six years' imprisonment. The indictment charged that Lara and his co-defendants attempted to kill a man by "beat[ing] him about the head and body with their fists, a 2x4 board and a baseball bat." As a lawful permanent resident who had committed an aggravated felony, Lara was eligible for deportation from the United States to Mexico pursuant to 8 U.S.C. § 1251(a)(2)(A)(iii) (1994) (now 8 U.S.C. § 1227(a)(2)(A)(iii)).

At the time of Lara's 1996 conviction for attempted first degree murder and armed violence, § 212(c) of the INA provided that a person subject to deportation for the commission of an aggravated felony could apply for discretionary relief from deportation, provided that he or she had served no more than five years' imprisonment for all such aggravated felonies and had lived in the United States for at least seven years. On April 24, 1996, while Lara was serving his prison sentence, Congress passed the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). AEDPA made aliens deportable by virtue of having committed an aggravated felony ineligible for discretionary relief under § 212(c). AEDPA provided that the denial

of discretionary relief from deportation was not reviewable by any court. (AEDPA § 440(a), 110 Stat. 1276-77, codified at 8 U.S.C. § 1105a(a)(10) (1997) (subsequently repealed).)

As a result of Lara's 1996 convictions, the INS initiated a deportation proceeding against Lara in January 1997. At his August 14, 1997, deportation hearing, Lara admitted that he had been convicted of attempted murder and armed violence, but requested a waiver under § 212(c) on the grounds that his convictions did not constitute aggravated felonies. The Immigration Judge ("IJ") ordered Lara deported, noting that his prior convictions "clearly fall within the definition of 'aggravated felony.'" The IJ further denied Lara's request for a waiver under § 212(c), stating that he was "ineligible for a § 212(c) waiver" under AEDPA.

Lara timely filed a notice of appeal and brief with the Board of Immigration Appeals ("BIA") seeking discretionary relief.[3] On March 30, 1998, the BIA dismissed his appeal, finding that he had been convicted of aggravated felony offenses, and was correctly found to be deportable. The BIA further held that Lara was "statutorily ineligible" for a § 212(c) waiver under AEDPA. The BIA noted that "[i]n reaching our decision, we have considered the respondent's argument that the AEDPA violates the equal protection clause ... because the provisions on § 212(c)" apply only "in deportation proceedings and not in exclusion proceedings." A warrant for Lara's removal was

---

[3]  Importantly, Lara made no mention in his brief of the applicability of the pre-1996 law regarding § 212(c).

issued on June 12, 1998, and he was removed from the country on June 25, 1998. Lara did not file a petition for judicial review.

Three years after Lara was removed from the United States, the Supreme Court held, as a matter of statutory interpretation, that the 1996 AEDPA amendments to the INA did not apply to aliens, like Lara, who pleaded guilty to criminal charges prior to the passage of those laws. *INS v. St. Cyr*, 533 U.S. 289 (2001). Thus, in light of *St. Cyr*, the IJ's and BIA's determinations that the AEDPA amendments automatically precluded Lara from eligibility for discretionary relief under § 212(c) ultimately proved incorrect.

On October 3, 2002, Lara was arrested in Illinois for armed robbery and attempted armed robbery. He was transferred to INS custody and was indicted on October 17, 2002, on one count of illegally reentering the United States in violation of 8 U.S.C. § 1326(a) and (b)(2).[4] Lara filed a motion to dismiss the indictment, collaterally attacking the underlying deportation order by arguing that he was denied due process when the immigration judge denied him a discretionary hearing under § 212(c). The district court denied Lara's motion to dismiss. *United States v. Lara-Unzueta*, 287 F. Supp. 2d 888 (N.D. Ill. 2003).

After denying Lara's motion to dismiss the indictment, the district court held a bench trial on December 5, 2003. Following the trial, Lara was convicted of illegally reentering the country.

---

[4]  Although the record is unclear, presumably the state charges against Lara were dropped after his transfer to INS custody.

The district court sentenced him on April 7, 2004, to 65 months' imprisonment.

Lara appealed his 2003 illegal-reentry conviction and sentence, and on May 24, 2005, we affirmed his conviction. *United States v. Lara-Unzueta,* No. 04-1954 (7th Cir. May 24, 2005) (granting limited remand to solicit the sentencing court's view of the probable result of ordering resentencing under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005)). Following his term of imprisonment, Lara was removed on August 30, 2007. Sometime between August 30, 2007, and July 2011, Lara—for the second time—reentered the United States. On July 21, 2011, Lara was charged with one count of illegal reentry in the present case. Specifically, the indictment alleged that on or about June 30, 2011, Lara illegally reentered the United States after prior deportations and removals on June 25, 1998, and August 30, 2007. On April 23, 2012, Lara moved to dismiss the indictment, collaterally attacking (for the second time) the June 25, 1998, removal. On June 20, 2012, District Judge Samuel Der-Yeghiayan denied Lara's motion to dismiss.

After the district court's denial of Lara's motion to dismiss the indictment, he was found guilty following a jury trial on August 6, 2012. Lara was convicted and sentenced to 78 months' imprisonment.

Having concluded this procedural odyssey, we turn to Lara's arguments on appeal.

## II.

## ANALYSIS

Lara first argues that District Judge Samuel Der-Yeghiayan was disqualified from presiding over his trial and sentencing. His arguments are based on 28 U.S.C. § 455(b)(3), the federal judicial disqualification statute, and can be distilled to two principal contentions. First, he argues that because Judge Der-Yeghiayan served as INS District Counsel when Lara was first deported, and because his conviction in this case relates back to that deportation order, he insists Judge Der-Yeghiayan had a role "concerning the proceeding" that subjects him to disqualification under § 455(b)(3). Second, he argues that in *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001), we recognized a rule that disqualifies a Presidentially-appointed United States Attorney who ascends to the federal bench from presiding over trials of defendants whose investigations initiated during the United States Attorney's tenure. Lara argues that this rule applies analogously to Judge Der-Yeghiayan by virtue of his past service as INS District Counsel, arguably the INS equivalent of the Presidentially-appointed United States Attorney. We address these arguments in turn.

### A. Judicial Disqualification

Lara first argues that the district judge erred by failing to disqualify himself from ruling on Lara's motion to dismiss and that this failure requires vacating his conviction and sentence and remanding for new proceedings before a new judge. The parties acknowledge that Judge Der-Yeghiayan, who presided over the trial resulting in the conviction and sentence now on appeal, served as District Counsel for the INS in Chicago

during 1997–1998.[5] It is also a fact that INS was the agency responsible for Lara's deportation proceeding resulting from his felony convictions in 1997–1998.

The parties also agree that, if not raised below, a claim under the judicial disqualification statute, 28 U.S.C. § 455(b), is reviewed for plain error, *United States v. Johnson,* 680 F.3d 966, 980 (7th Cir. 2012) (plain error); *United States v. Diekamper,* 604 F.3d 345, 351 (7th Cir. 2011) (clear error).[6]

If Judge Der-Yeghiayan were to be disqualified from presiding over Lara's trial and sentence, Lara would be entitled to have his conviction reversed and remanded for proceedings before a new district judge. *See Franklin v. McCaughtry,* 398 F.3d

---

[5]   *See* Def. Br. at 5 n.3 and Gov't Br. at 4 n.3.

[6]   Lara acknowledges our precedent, but argues that the proper standard of review should be *de novo* because "a deferential standard of review does not correlate well with the alleged error" inasmuch as Section 455 is "directed to the judge and is self-executing … [and] imposes a duty on the judge to act sua sponte, even if no motion or affidavit is filed." *See United States v. Balistrieri,* 779 F.2d 1191, 1202 (7th Cir. 1985). But in *Balistrieri*—unlike here—the defendant sought the district judge's disqualification during the trial court proceeding by filing numerous recusal motions and supporting memoranda thus authorizing a less-deferential standard of review in this court. *Id.* at 1196. Because the record was well-developed below in *Balistrieri*, we said that "appellate review of a judge's decision not to disqualify himself, when he is asked to do so by a proper and timely motion supported by affidavits and perhaps other evidence, should not be deferential." *Id.* at 1203. No such arguments or filings were made at trial in this case, so we review Judge Der-Yeghiayan's failure to disqualify himself sua sponte for plain error. *Johnson,* 680 F.3d at 980.

955, 962 (7th Cir. 2005) (reversing for new trial because trial judge was actually biased); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) (same). Section 455 provides that a judge:

> shall disqualify himself … [w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy.

28 U.S.C. § 455(b)(3); *see also* Code of Conduct for United States Judges, Canon 3(C)(1)(b).

### i.  *"The Proceeding"*

We conclude that Judge Der-Yeghiayan was not disqualified from presiding over Lara's trial and sentencing. First, Judge Der-Yeghiayan has not "served in governmental employment and in such capacity participated as counsel, [or] adviser … concerning *the proceeding* or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3) (emphasis added). *The proceeding* means *the current proceeding*. This interpretation is dictated by the text of the statute. On July 21, 2011, Lara was indicted for the crime that is the subject of this direct appeal. On the day of Lara's indictment, Judge Der-Yeghiayan had been a sitting United States District Judge for over eight years. Judge Der-Yeghiayan was not involved in the investigation, preparation of the indictment, presentment of the indictment, or prosecution of the 8 U.S.C. § 1326(a) conviction that is the subject of *the proceeding*—this criminal case. The present appeal of Lara's criminal proceeding presided over by Judge Der-Yeghiayan in

2012 is not the same as Lara's deportation proceeding from 1997–98.

At oral argument, counsel for Lara indicated that he "read the 'concerning' language differently." By "differently" counsel suggested that "concerning" expands the scope of "the proceeding" to include Lara's first deportation proceeding in 1997–1998. He argued that if Judge Der-Yeghiayan rules on a dispositive motion that relies on a deportation order entered when the judge simply had supervisory responsibility over the INS office prosecuting that first deportation, then now-Judge Der-Yeghiayan has a role "concerning the proceeding," subjecting him to disqualification. Not so. "Concerning" does not expand the scope of this disqualification statute. "Concerning" appears twice in 28 U.S.C. § 455(b)(3). Both references confine *the* proceeding to *this* proceeding. The particular case in controversy is *this* proceeding—an appeal from an indictment returned on July 21, 2011, for which Lara was convicted on August 6, 2012, and sentenced on January 3, 2013. Other than presiding over Lara's trial, conviction, and sentence, Judge Der-Yeghiayan had nothing more to do with "the proceeding" that is the subject of this appeal.

Even if we were to examine the first proceeding back in 1997–1998 that Lara tries to connect to this one, his argument would still fail. The statute forbids "actual participation" and Judge Der-Yeghiayan did not have actual participation in that first proceeding when he was District Counsel for the INS.

### ii. The United States Attorney-Exception Does Not Apply to Judge Der-Yeghiayan's Service as INS District Counsel

Lara next argues that as District Counsel for the INS, Judge Der-Yeghiayan was in an analogous position to the Presidentially-appointed United States Attorney and thus should have been prohibited from ruling on a proceeding that he had prosecuted when he was District Counsel. *See United States v. Arnpriester,* 37 F.3d 466, 467 (9th Cir. 1994) (reversing conviction because a U.S. district judge cannot adjudicate a case that began while he was a Presidentially-appointed United States Attorney for the same judicial district where defendant was prosecuted).

In *United States v. Ruzzano,* we said that "[a]s applied to judges who were formerly AUSAs, § 455(b)(3) requires some level of actual participation in a case to trigger disqualification." 247 F.3d at 695. We then described a limited "exception to the requirement of actual participation for a judge who was formerly *the* United States Attorney" in that judicial district when the case was prosecuted. *Id.* (emphasis added). This exception is not applicable here because the position of INS District Counsel is not comparable to that of the Presidentially-appointed United States Attorney. *See Petrov v. Gonzales,* 464 F.3d 800, 803-04 (7th Cir. 2006); *see also, Shewchun v. Holder,* 658 F.3d 557, 570 (6th Cir. 2011).

In 1998, Judge Der-Yeghiayan, as the District Counsel for the INS, was part of the Executive Branch when Lara was adjudicated and deported. As discussed above, he did not participate in that proceeding, although his name appeared on

a pleading filed by the government identifying him as the District Counsel. There is a sharp distinction between the Judicial Branch where the U.S. Attorney exception might apply, and the Executive Branch which includes the position of INS District Counsel. "Officials of the Executive Branch (a category that includes immigration judges) play dual roles all the time." *Petrov,* 464 F.3d at 803. For service in the Executive Branch, "[n]o decision of which we are aware holds that this mixture of prosecutorial and adjudicatory functions violates the Constitution." *Id.* Consequently, there is no conflict of interest resulting from Judge Der-Yeghiayan's former service in the Executive Branch.

Although then-District Counsel Der-Yeghiayan was not personally involved in Lara's 1998 deportation proceeding, even if he had been, it would have no effect on the criminal proceeding that is now before us. After his 1998 deportation, Lara again illegally entered the United States and was arrested for committing more violent crimes. He was convicted of illegal reentry in 2004 and deported in 2007. The case before us now involves his second illegal reentry and conviction. Although Lara is the same person who was first deported during Judge Der-Yeghiayan's tenure as INS District Counsel, his present appeal from a second criminal conviction has nothing to do with that 1998 deportation.

Section 28 U.S.C. § 455(b)(3) requires "some actual level of participation in a case to trigger disqualification." *See Ruzzano,* 247 F.3d at 695-96 (finding no error when the defendant did "not present any evidence that [the former AUSA judge] participated in his case in any fashion."). In light of the foregoing, the exception for the former Presentially-ap-

pointed U.S. Attorney discussed in *Ruzzano,* 247 F.3d at 695, does not extend to other past service in the Executive Branch. Moreover, a district judge who served in the Executive Branch is not disqualified from presiding over a proceeding under §455(b)(3) absent an actual conflict of interest. *Petrov,* 464 F.3d at 803.

### B. Lara's Collateral Attack on his 1998 Deportation Order Pursuant to 8 U.S.C. § 1326(d).

Finally, Lara argues that the district court should not have denied his motion to dismiss the indictment for unlawful reentry because he satisfied the criteria of 8 U.S.C. § 1326(d).[7] The parties agree that the denial of a motion to dismiss the indictment under 8 U.S.C. § 1326(d) is reviewed *de novo. United States v. Arita-Campos,* 607 F.3d 487, 491 (7th Cir. 2010).

---

[7]   Title 8, section 1326 of the United States Code makes it an offense to re-enter the United States illegally after having been deported. Because an original order of deportation is a condition precedent to the operation of § 1326, the Supreme Court has held that a defendant may collaterally attack the deportation order underlying the offense. *United States v. Mendoza-Lopez,* 481 U.S. 828, 837-38 (1987). However, "[i]n a criminal proceeding under [8 U.S.C. § 1326(d)], an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that–

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair."

8 U.S.C. § 1326(d).

Although we have not "expressly held that all three requirements must be met" for Lara's collateral attack of his deportation order to prevail under 8 U.S.C. § 1326(d), we have "certainly implied that is the case." *Id.* Three other circuits have explicitly held that a defendant must satisfy all three prongs to prevail in a collateral attack brought pursuant to 8 U.S.C. § 1326(d). *See United States v. Torres,* 383 F.3d 92, 98-99 (3d Cir. 2004); *United States v. Wilson,* 316 F.3d 506, 509 (4th Cir. 2003); *United States v. Fernandez-Antonia,* 278 F.3d 150, 157 (2d Cir. 2002). However, we need not decide whether to join these circuits today because Lara concedes on brief that "[i]t would be frivolous to argue that under this Court's current interpretation of 8 U.S.C. § 1326(d), the district court erred in denying Mr. Lara-Unzueta's motion to dismiss the indictment." Def. Br. at 39. *See, e.g, United States v. Zambrano-Reyes,* 724 F.3d 761 (7th Cir. 2013); *United States v. Arita-Campos,* 607 F.3d 487 (7th Cir. 2010); *United States v. Santiago-Ochoa,* 447 F.3d 1015 (7th Cir. 2006); and *United States v. Roque-Espinoza,* 338 F.3d 724 (7th Cir. 2003). Lara's counsel confirmed this concession at oral argument.

"We require a compelling reason to overturn circuit precedent," *Nunez-Moron v. Holder,* 702 F.3d 353, 357 (2012) (citation omitted), as "principles of stare decisis require that we give considerable weight to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling." *Santos v. United States,* 461 F.3d 886, 891 (7th Cir. 2006) (citation omitted). Here, there has been no such decision by the Supreme Court, or a statutory overruling, and Lara's counsel concedes that our precedents

interpreting 8 U.S.C. § 1326(d) foreclose his client's ability to prevail. If Lara files a petition for a writ of certiorari, and the Supreme Court issues a writ, he will have the full opportunity to raise arguments preserved here that our precedents foreclose.

## III.

## CONCLUSION

Judge Der-Yeghiayan was not disqualified from presiding over Lara's trial and sentencing because he has not "served in governmental employment and in such capacity participated as counsel [or] adviser concerning *the proceeding* or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3) (emphasis added). While serving as INS Counsel in the Executive Branch, Judge Der-Yeghiayan was not personally involved in Lara's 1997–1998 deportation proceeding. Even if he had been, the criminal proceeding on appeal here is entirely independent of his first deportation proceeding fifteen years ago. Additionally, Lara's counsel concedes that our circuit's precedents foreclose Lara's collateral attack of his deportation order under 8 U.S.C. § 1326(d).

For these reasons, we AFFIRM Lara's conviction and sentence.