KANNE, Circuit Judge,
dissenting.
This is a simple statutory interpretation case. The parties ask us to determine the meaning of the words “judicial district or similar legal entity” as they appear in the venue provision of the Fair Debt Collection Practices Act, and the majority is happy to oblige. But there is a problem: This court has already answered that question. In Newsom v. Friedman, 76 F.3d 813 (7th Cir.1996), this court found that the operative phrase was unambiguous and susceptible of a plain-meaning interpretation. We relied on the edition of Black’s Law Dictionary current when the FDCPA was passed to define a judicial district or similar legal entity as:
One of the circuits or precincts into which a state is commonly divided for judicial purposes; a court of general original jurisdiction being usually provided in each of such districts, and the boundaries of the district marking the territorial limits of its authority; or the district may include two or more counties, having separate and independent county courts, but in that case they are presided over by the same judge.
Newsom, 76 F.3d at 817 (quoting Black’s Law Dictionary 848 (6th ed.1990) (and referencing earlier editions)). Since then, the only other circuit court to directly consider the issue adopted the exact same definition. Hess v. Cohen & Slamowitz LLP, 637 F.3d 117, 121 (2d Cir.2011).
We have said, too many times to count, that we require a “compelling” reason to overturn circuit precedent, as the principle of stare decisis requires that we give considerable weight to prior decisions of this court. United States v. Lara-Unzueta, 735 F.3d 954, 961 (7th Cir.2013). The presumption in favor of existing law is overcome only in the most exceptional of circumstances, such as when our decision is overruled or undermined by the decisions of a higher court or by legislative action. Id. We might also consider whether the existing rule is simply unworkable as a practical matter, whether surrounding principles of law have developed so far as to leave an old rule behind, or whether facts have changed so much as to rob the rule of its general applicability or justification. Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 854-55, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). What we will certainly not do is overturn a previous decision simply because a majority of the members of this court believe it was incorrect:
[I]f the fact that a court considers one of its previous decisions to be incorrect is a sufficient ground for overruling it, then stare decisis is out the window, because no doctrine of deference to precedent is needed to induce a court to follow the precedents that it agrees with; a court has no incentive to overrule them even if it is completely free to do so. The doctrine of stare decisis imparts authority to a decision, depending on the court that rendered it, merely by virtue of the authority of the rendering court and independently of the quality of its reasoning. The essence of stare decisis is that the mere existence of certain decisions becomes a reason for adhering to their holdings in subsequent cases.
*659 Tate v. Showboat Marina Casino P’ship, 431 F.3d 580, 582-83 (7th Cir.2005) (citation and internal quotation marks omitted).
Or so I thought. Despite the fact that the principle of stare decisis carries “special force” in the statutory interpretation context, John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 139, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) — so much force, in fact, that asking us to overrule a previous statutory interpretation decision can result in the summary disposition of your appeal, see, e.g., United States v. Howell, 557 Fed.Appx. 579 (7th Cir. 2014) — I cannot find any remotely valid justification for overruling Newsom in the entirety of the majority’s opinion. It makes no difference that Newsom was a panel decision. Nearly all of the decisions that issue from this court are panel decisions, and the principles of stare decisis still apply. The fact that we are now sitting en Banc means that we have the authority to disregard a prior decision, but it does not mean that we can or should do so without a valid reason.[1]
What reason is given? The majority opinion complains that the New-som/Black’s definition is too vague, and that the sources cited by Black’s are underwhelming. Those are not sufficient reasons to abandon existing law; they are just another way of saying the majority believes that Newsom was decided incorrectly. After casting that decision aside, the majority then moves immediately to the policy objectives underlying the FDCPA, and summarily redefines the phrase “judicial district or similar legal entity” to mean “the smallest geographic area that is relevant for determining venue in the court system in which the case is filed.” Even if I leave the stare decisis issue behind, that definition is wrong because the process that led to it disregarded the established canons of statutory construction, and it is wrong because it cannot be usefully or consistently applied to the court systems in our jurisdiction. I write separately to address each of those points, and I ultimately join the dissent of Judge Flaum.
I.
I will begin by noting the most obvious flaws in the majority’s process. As I have mentioned, the core of this case is a simple question of statutory construction. The first canon of statutory construction is that we begin with the text itself. Connecticut Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Absent ambiguity, the first canon is also the last: “judicial inquiry is complete.” Id. (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)). The majority opinion summarily concludes that the words “judicial district or similar legal entity,” at least in this context, are ambiguous, and so turns to legislative intent to discern the meaning of the statute. Like Judge Flaum, I believe the majority is mistaken. The operative phrase is unambiguous and susceptible of a common understanding, and there is therefore no need to turn to policy concerns or legislative history to decide this case. By shortchanging the first step in the process, the majority has engaged in disordered statutory interpretation.
First, not only was the original panel’s reference to Black’s Law Dictionary consistent with existing law as set out in Newsom, it was consistent with usual interpretive practice. “Without a statutory *660 definition, we construe [a] term ‘in accordance with its ordinary or natural meaning,’ a meaning which may be supplied by a dictionary.” Carmichael v. The Payment Ctr., Inc., 336 F.3d 636, 640 (7th Cir.2003) (quoting FDIC v. Meyer, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). I agree with the majority that there are dangers to blind reliance on dictionary definitions, but as Judge Flaum rightly notes, this particular dictionary provided a definition that comports with common sense. I do not grasp the value of the majority’s search for a definitive source underlying the Black’s definition. Dictionaries — even legal ones — are descriptive, not prescriptive; their goal is to define words according to their common usage. That is why the meanings of words often change from one edition to another, and why some new words enter a dictionary and some old words leave. Does the majority mean to suggest that Black’s was wrong about the common usage of the term “judicial district” at the time the statute was enacted? If so, on what basis? If not, what is the point?
Second, the Black’s definition is not “vague” at all, at least not in the context of this case. Black’s tells us to look for “one of the circuits or precincts into which a state is commonly divided for judicial purposes.” In Indiana, that is easy to do. The “circuit or precinct” into which Indiana is “commonly divided for judicial purposes” is the “judicial circuit.”[2] See Ind. Const. Article 7, Sections 1, 7-8 (empowering the General Assembly to divide the state into judicial circuits); Ind.Code Title 33, Article 28 (establishing the powers and duties of the circuit courts, generally); see also 7 Ind. Law Encyc. Courts § 17. Indiana has 92 counties, and all but two of them (the smallest two, Ohio and Dearborn) comprise their own judicial circuit and have their own circuit court. See Ind.Code Title 33, Article 33, Chapters 1-92 (establishing and numbering a judicial circuit and circuit court for each Indiana county). For most counties, the Indiana legislature has created “superior courts” to share the load with the circuit court, or to supplant it as the primary trial court within that judicial circuit. See, e.g., Ind.Code § 33-33-49-6 (Marion County). With respect to at least one county, the legislature has taken a different approach, and created additional circuit judgeships. See, e.g., Ind.Code 33-33-53-1-8 (Monroe County). Some counties have been legislatively authorized to operate separate small claims mechanisms within the circuit court. See Ind.Code § 33-28-3-1-10. One county, Saint Joseph, has a separate probate court created by the legislature. Ind.Code § 33-31-1-1. In short, county-by-county structures vary a great deal, but all of those structures exist within a judicial circuit. The judicial circuit is the level at which uniformity can be found; the common division for judicial purposes.
It is just as easy to see that the Marion County Small Claims Courts do not qualify. The Marion County Small Claims Courts are unique in the State of Indiana in terms of their structure and function. And Marion County, obviously, falls within the Indiana Judicial System. The Marion County Small Claims Courts are therefore not a common division in the state court system in which they exist. They are the exact opposite.
There is nothing vague about any of this. And yet the majority tosses the Newsom/.Black’s definition aside, claiming it is too vague and unfounded to be useful. Next, it immediately turns to the policy *661 underlying the FDCPA to craft an entirely new definition with no source in any statute, case law, usage guide, dictionary, or any other conceivable source of authority on the meaning of the words, rather than the intent behind the words, in this statute. That is not how statutory construction works.
For one thing, casting aside the New-som/Black’s definition — if I were willing to go that far with the majority — does not mean there can be no “plain meaning.” It is not comprehensible to me to suggest that we have no idea what Congress means when it says the words “judicial district.” We know exactly what a “judicial district,” in the common parlance of the law, is. Our job is to hear appeals from seven of them. If we read the words “judicial district” to refer to judicial districts as they exist in the federal court system and as they are so frequently referenced throughout the United States Code,[3] the commonsense approach would be to understand the words that follow, “or similar legal entity,” to refer to the analogous level of division in a given state court system, however titled.[4]
But the majority opinion never stops to consider the possibility that the words “judicial district” may just not be that great a puzzle. Why? Because “terms that seem plain and easy to apply to some situations can become ambiguous in other situations.” Op. at 639. That is an inadequate justification for a finding of ambiguity. *662 “The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.” Vulcan Const. Materials, LP v. Fed. Mine Safety and Health Review Comm’n, 700 F.3d 297 (7th Cir.2012) (citation omitted). Noticeably absent from that list is reference to the unusual facts of any particular case. There are good reasons for that. A law that is subject to change whenever hard facts come along is no law at all. Hard facts mean hard work is before us, not that the law is wrong.
Moreover, even if the statute were ambiguous, I do not see how the majority’s chosen definition falls within the range of that ambiguity. Statutory ambiguity presents us with an opportunity to choose from among equally legally justified options. It is not a creative license. I do not see the majority presenting competing common understandings of what a “judicial district or similar legal entity” could be. I see the majority replacing the words “judicial district or similar legal entity” with an entirely new phrase, “smallest geographic area that is relevant for determining venue in the court system in which the case is filed,” because those new words produce the result most consistent with the purpose of the statute in this particular case. That may be an equitable outcome, but it is legally improper: “Ambiguity sometimes justifies resort to legislative history, but it is used to decipher the ambiguous language, not to replace it.” Peterson v. Somers Dublin Ltd., 729 F.3d 741, 749 (7th Cir.2013). The majority’s reliance on legislative intent is inappropriate here, and it leads to some confounding results.
II.
I have made my concern with the majority’s analytical process clear: I believe the majority too casually tosses aside principles of stare decisis and the canons of statutory construction to arrive at a result consistent with its understanding of the policy aims undergirding the FDCPA. Now I will briefly address why I believe the majority’s result is just plain wrong. I believe it is wrong because it leads to bizarre and inconsistent results irreconcilable with the statutory text and the intent behind it, and because the outcome reached by the majority defeats its own stated purpose.
First, the majority’s definition means that many federal judicial districts are not “judicial districts,” but divisions of those federal judicial districts are. Many federal judicial districts are broken up into smaller geographical units: divisions. A quick internet search confirms that at least some of those judicial districts’ local rules require civil actions to be filed in the division of the district court in which proper venue lies. See, e.g., Northern and Southern Districts of Iowa Local Rule 3(b); District of Montana Local Rule 3.2(b); Western District of Virginia Local Rule 2(b). It cannot be meaningfully argued that the divisions are not “geographic areas” in the first place; their boundaries are tied to county lines.
In these judicial districts, the divisions are therefore the “smallest geographic area that is relevant for determining venue in the court system in which the case is filed.” The only possible way the majority could expand its definition of a “judicial district” to include the districts themselves is to resort to “details of court administration” — same judges, same administrative staff, same court seal, etc. But even where that works (and it will not work everywhere), it is exactly the approach the majority ostensibly eschews in abandoning Newsom. Op. at 638. That is a problem.
Second, the majority’s definition leads to inconsistent results within the same judicial systems. Putting aside the problem *663 that some federal districts are still “districts” while others are not, one need only-look to Indiana to see how. Marion County is the only county in Indiana for which the small claims courts will constitute the relevant judicial district. The majority’s definition of the operative phrase therefore means that a “judicial district or similar legal entity” in Marion County is something different than a “judicial district or similar legal entity” in Shelby County, Saint Joseph County, Allen County, or Jasper County. I can conceive of no possible justification for this outcome. How can we define a “judicial district” — something which by the nature of the words themselves must be a division of some larger entity — in a way that is not consistent with respect to that larger entity?
I understand that the majority outcome is a boon to Marion County residents who have trouble getting from one township to another to defend against a case. Perhaps this is especially true for the typical small claims defendant, who is likely a person of limited means. But at least public transportation exists in Marion County in a meaningful way. There are poor people in rural Indiana, too, and their county seats are often just as far away from them, if not farther, than the distance between the two Marion County townships at issue in this case[5] The majority’s new definition does nothing for them, and the result has an air of arbitrariness about it. Even if I ride along with the majority to the point of considering legislative intent, am I to believe Congress intended the FDCPA to provide greater protection to debtors in Marion County than in the rest of the State of Indiana? I cannot accept as plausible any reading of the words “judicial district” that varies so wildly from one place within the same court system to another.
That leads me to my greatest concern. The majority opinion is sprinkled throughout with language suggesting that its goal is to establish a rule honoring Congress’s intent to impose consistent federal limitations on debt collectors’ choice of venue when filing in state courts. See, e.g., Op. at 640 (“The presence of the venue provision in the Act shows congressional dissatisfaction with allowing state law to determine where suits to collect consumer debts can be filed.”).[6] These remarks are often presented as a foil to Judge Flaum’s preferred approach: defining a “judicial district,” with respect to a state court system, as that unit into which the state consistently divides itself. But if enacting a federal rule above the reach of meddling, incompetent, or insufficiently protectionist state governments was the majority’s intent, it has failed. The majority rule depends entirely on state venue rules, which the state courts or legislatures are free to change on a whim. Ultimately, therefore, the majority reaches a result that frustrates its own purpose; this rule is no “rule” at all.
Finally, none of this is meant to suggest that forum-shopping by debt collectors in Marion County is not a problem, or that nothing should be done to fix it. It is a problem, and Indiana is already taking steps to fix it. But the majority disregarded the principle of stare decisis without even paying lip service to any of the established justifications for doing so, then proceeded to shortchange the first step of the *664 statutory interpretation process in its effort to achieve a result consistent with its understanding of the policy aims of the FDCPA. In so doing, the majority reached a result which defeats its own purpose and falls apart with any attempt at general application to the various court systems within our territorial jurisdiction. I cannot sign on to that. While I am of the opinion that the judicial circuits themselves, and not any specific court within them, are the relevant “judicial districts” in Indiana, I find Judge Flaum’s reasoned approach and his adherence to our New-som decision much more persuasive than that put forward by the majority. I therefore join in his dissent.

. By way of comparison, the United States Supreme Court sits "en Banc " in every case that it hears, and it has the authority to overturn its own prior decisions in every case that it hears. And yet Supreme Court opinions are littered with references to the doctrine of stare decisis.

. The General Assembly has authorized the Office of Judicial Administration to break the state up into a number of larger "judicial districts," Ind.Code § 33-24-6-10, but those districts exist for administrative, not judicial, purposes.

. It is true that the vast majority of collection actions take place in state courts, but we would do well to remember that debt collection actions can and do take place in federal court, as well. The FDCPA by its terms applies to those actions, too, and Congress knew that when it passed the law. Moreover, the impact of the FDCPA on federal court debt collection actions is an issue of growing concern. Student debt has surpassed all but mortgage debt as the largest bit of baggage in our nation’s consumer inventory, and we are witnessing an uptick in federal court collection actions as the default rate on federal student loans increases. See Halah Touryalai, $1 Trillion Student Loan Problem Keeps Getting Worse, Forbes (Feb. 21, 2014), http:// www.forbes.com/sites/halahtouryalai/2014/02/ 21/1 -trillion-student-loan-problem-keeps-getting-worse/; Scott Travis, Feds crack down on South Florida student loan defaulters, Sun-Sentinel (May 12, 2012), http://articles.sun-sentinel.com/2012-05-12/news/fl-student-loan-lawsuits-20120510_1 _student-loan-default-rate-federal-stafford-loans. Suits founded on debts owed to the federal government may be filed in federal court regardless of the amount-in-controversy. These suits are exempt from FDCPA coverage when initiated by the federal government itself, 15 U.S.C. § 1692a(6)(C), but defaulted loans are often pursued by private contractors to the Department of Education, for whom the rules are less clear. See Federal Student Aid Office of the Department of Education (June 24, 2014), https://studentaid.ed.gov/about/data-center/ business-info/contracts/collection-agency. I mention all of this because it would be shortsighted of us to forget that the rule we espouse in this case applies in every court system within our geographical jurisdiction, not just Indiana's. That includes the federal courts, and what may soon become a litigation area of substantial public concern. As I explain hereafter, any attempted application of the rule proposed by the majority to the federal court system substantially undermines the integrity of their result.

. The relevant question, at that point, is how do we identify an appropriate comparator in a state court system? I would begin by noting the salient characteristics of our model: a federal judicial district, something we can all agree should fall within any sensible interpretation of the words “judicial district or similar legal entity.” I will not generate an exhaustive list here, but it would likely turn out to look a great deal like the Newsom!Black's definition: lowest-level common division for judicial purposes in the system in which it exists, etc. Next, I would search for a level of division in Indiana’s court system that is analogous in most respects. It would again be easy to see that the constitutionally authorized judicial circuits meet nearly every criteria we could put forward; the Marion County Small Claims Courts would meet none.

. Marion County encompasses 396 square miles and is nowhere near the largest county in the state. Allen County, home to Fort Wayne, Indiana’s second most populous city, covers 657 square miles. Jasper County, home to the undersigned, covers 560.

. I share some of Judge Sykes’s concerns about the propriety of that consideration in light of general principles of federalism, although I do not understand that issue to be directly before us.