In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3534

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE HERRERA-VALDEZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cr-928 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED SEPTEMBER 21, 2015 — DECIDED JUNE 17, 2016

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Jose Gustavo Herrera-Valdez was
prosecuted for illegal reentry after being deported. Before
trial, he filed a motion to disqualify Judge Der-Yeghiayan
from presiding over his prosecution because the judge served
as the District Counsel for the Immigration and Naturaliza-
tion Service (INS) at the time Herrera-Valdez was deported.
He also filed a motion to dismiss the indictment against him
on various grounds, which was denied. Having pled guilty,

but reserving the right to appeal these issues, he now appeals those rulings. Because we find that the district court should have granted Herrera-Valdez's motion to disqualify, we reverse his conviction.

## I. BACKGROUND

Herrera-Valdez is a citizen of Mexico who became a permanent resident of the United States in April 1990. In November 1992, Herrera-Valdez was arrested and charged with various drug crimes in violation of 21 U.S.C. §§ 846, 841(b)(2). Herrera-Valdez pled guilty to conspiracy to possess with intent to distribute cocaine, and was sentenced to seventy months in prison.

In February 1994, the Immigration and Naturalization Service (INS) served Herrera-Valdez with an order to show cause and notice of hearing contending that Herrera-Valdez was removable from the United States because he was convicted of an aggravated felony.

On December 22, 1997, after spending five years and one month in the custody of the Bureau of Prisons, INS took custody of Herrera-Valdez. Two months later, Herrera-Valdez received a Notice to Appear for a removal hearing.

At the hearing, Herrera-Valdez admitted that he was convicted of an aggravated felony. He requested a waiver under the Immigration and Naturalization Act § 212(c), which, at the time, was available for deportable offenses where the offender established lawful permanent residence over seven years and did not serve more than five years in custody for the underlying offense. However, the immigration judge denied the request and ordered Herrera-Valdez deported.

Herrera-Valdez filed his appeal of the removal order one day past the thirty-day deadline, and INS filed a responsive brief in support of the immigration judge's decision. The Chicago District Counsel of the INS at the time was Samuel Der-Yeghiayan, who later became a judge in the United States District Court for the Northern District of Illinois. His name was listed in two places on the four-page brief. First, it appeared on the title page, and identified him as District Counsel. Second, his name was printed in the signature block of the brief. An assistant district counsel's name was actually signed to the brief.

The Board of Immigration Appeals (BIA) denied Herrera-Valdez's appeal, reasoning that because the appeal was late, the BIA had no jurisdiction to decide the merits of his case. After the denial, Herrera-Valdez obtained new counsel and filed a motion to reopen based on his prior counsel's ineffective assistance with filing a timely appeal. The INS filed a brief in opposition to Herrera-Valdez's motion to reopen, arguing that Herrera-Valdez did not attach the proper affidavit or inform the BIA whether Herrera-Valdez's prior counsel was notified of the allegations. The brief again listed Samuel Der-Yeghiayan as Chicago District Counsel on both the title page and the signature block. Again, the brief was signed by someone else in the office.

In March 2000, the BIA dismissed the appeal, because Herrera-Valdez did not follow certain technical requirements. Specifically, Herrera-Valdez did not include "an affidavit detailing the agreement between [Herrera-Valdez] and prior counsel" or provide any "indication that previous counsel was informed of [Herrera-Valdez's attorney disciplinary]

complaint, nor given an opportunity to respond" and, as a result, failed to perfect his ineffective assistance of counsel claim. Herrera-Valdez then re-submitted the pleading as a motion to reconsider and included the proper documentation. However, he failed to pay the proper filing fee and the BIA also denied the motion to reconsider.

Almost three years later in March 2003, Herrera-Valdez left the United States for Mexico. According to Herrera-Valdez, at the time he departed, he did not know he was subject to a deportation order and in March 2008, he re-entered the United States. In November 2009, he was arrested in Illinois for the manufacture and/or delivery of between 15 and 100 grams of cocaine, as well as being a convicted felon in possession of a firearm. Four days later, Immigration and Customs Enforcement (ICE) officers located Herrera-Valdez in custody.

Herrera-Valdez pled guilty in state court to one count of possession with intent to distribute 15–100 grams of cocaine and was sentenced to six years' imprisonment. Shortly after his conviction, ICE officers located him in state prison, and informed him his prior removal order would be reinstated.

In November 2012, Herrera-Valdez was criminally indicted for illegal reentry in violation of 8 U.S.C. § 1326(a). The case was assigned to Samuel Der-Yeghiayan, who had left INS in 2000 and was then serving as a judge in the Northern District of Illinois. Herrera-Valdez filed a motion to disqualify Judge Der-Yeghiayan pursuant to 28 U.S.C. § 455, which he denied. Herrera-Valdez then filed a motion to reconsider as well as a motion to dismiss the indictment. The next day, Judge Der-Yeghiayan denied the motion to reconsider, and soon after, denied the motion to dismiss. Ultimately, Herrera-Valdez pled guilty to illegal reentry under 8 U.S.C. § 1326(a),

reserving his right to appeal the denials of his motion to disqualify Judge Der-Yeghiayan and to dismiss the indictment.

In November 2014, Judge Der-Yeghiayan entered judgment on Herrera-Valdez's guilty plea and sentenced Herrera-Valdez to 46 months in prison and a $100 fine. Herrera-Valdez now appeals, claiming that the district court erred in denying both his motion to disqualify and his motion to dismiss.

## II. ANALYSIS

### A. Recusal Order Was Reviewable

As an initial matter, we must determine if we are permitted to review Herrera-Valdez's appeal of his motion to disqualify at this stage in the proceedings. Our circuit is the only one to hold that appellate review of a judge's failure to disqualify herself under § 455(a) requires petitioning the appellate court for a writ of mandamus prior to trial. *United States v. Ruzzano*, 247 F.3d 688, 694 (7th Cir. 2001); *United States v. Boyd*, 208 F.3d 638, 645 (7th Cir. 2000). We have expressed several reasons for this rule. Foremost is the goal of preventing damage to the judiciary's public image by swiftly remedying any perception of bias. *Id.* "Once the proceedings at issue are concluded, a post hoc motion for recusal will do little to remedy any appearance of bias that was present." *United States v. Diekemper*, 604 F.3d 345, 352 (7th Cir. 2010); *see also United States v. Troxell*, 887 F.2d 830, 833 (7th Cir. 1989). Second, is the desire to promote judicial economy. "Counsel who perceive a problem under § 455(a) must not tarry, for delay imposes heavy costs on other litigants and the judicial system." *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1232 (7th Cir. 1988). We have also noted that unlike a case of actual bias under

§ 455(b), a party's substantial rights are not affected by the denial of a recusal motion under § 455(a), and "it is a fundamental principle of appellate review that unless an error affects the substantial rights of the appellant, it is not a basis for reversal." *Ruzzano*, 247 F.3d at 693 (citing *Troxell*, 887 F.2d at 833).

However, we have considered relaxing the mandamus requirement in special circumstances. *See, e.g., United States v. Ward*, 211 F.3d 356, 364 (7th Cir. 2000) (questioning application of mandamus requirement where party did not discover information upon which recusal motion was based until after trial). We have also debated the merits of denying parties the ability to appeal disqualification if they fail to do so immediately after the district court rules on their motions. *See Boyd*, 208 F.3d at 650 (Ripple, J., dissenting) (observing that other circuits have found parties do have some rights under § 455(a), and direct appeals can provide a "partial cure" to any harm to public perceptions of the judiciary).

Herrera-Valdez did not petition for a writ of mandamus when his § 455(a) motion was denied in the district court proceedings. Instead, he entered into a conditional plea agreement which preserved his right to appeal the denial of his motion. He points to our cases which allow that "[w]ith the consent of the government and approval of the court, a defendant may enter a conditional plea of guilty, reserving … the right to have an appellate court review an adverse determination of a specified pretrial motion." *United States v. Kingcade*, 562 F.3d 794, 797 (7th Cir. 2009) (internal quotation marks omitted). The government agrees that we may review Herrera-Valdez's recusal argument because of the express reservation in

the conditional plea agreement that the district court approved.

We have never examined whether a party has effectively waived its right of appellate review of a disqualification motion in the context of a plea agreement that reserves certain arguments for appeal. Several factors lead us to conclude that under these circumstances, we may review Herrera-Valdez's appeal of the district court's denial of his disqualification motion.

First, the Supreme Court has reviewed appellate courts' decisions regarding disqualification motions under § 455(a) even when the appeal was not from a mandamus ruling, suggesting that the lack of an interlocutory appeal does not deprive us of jurisdiction to review the district court's denial of the disqualification motion. *See Liteky v. United States*, 510 U.S. 540 (1994); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). We have instead construed a failure to adhere to the mandamus requirement as a waiver of a § 455(a) recusal argument on appeal. *See United States v. Johnson*, 680 F.3d 966, 980 (7th Cir. 2012); *United States v. Smith*, 210 F.3d 760, 764 (7th Cir. 2000). This distinction makes the government's express request that we review the recusal issue significant. It means the government has effectively waived any argument that Herrera-Valdez waived *his* ability to appeal the district court's ruling. *See, e.g., United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) (holding that government can "waive waiver" if it fails to assert the preclusive effect of waiver before the appellate court).

Second, the circumstances of Herrera-Valdez's appeal mitigate some of the usual concerns underlying the mandamus

requirement. For example, if a full-blown trial or series of rulings occurred between the denial of a recusal motion and appeal of that motion, not only would significant judicial resources be wasted, but all of the intervening rulings would be vulnerable to public perceptions of bias. Here, Herrera-Valdez's case terminated quickly (he entered into the plea agreement a mere fourteen days after his recusal motion was denied), and he only filed one motion between the time Judge Der-Yeghiayan denied his recusal motion and the court entered his guilty plea.  After his recusal motion was denied, the subsequent ruling on the motion to dismiss the indictment and sentencing may have damaged the image of the judiciary and wasted some judicial resources. But we do not think the damage here is beyond repair on appeal, and the swift and relatively straightforward disposition of this case persuade us that the benefits of reviewing the recusal motion at this juncture outweigh the costs. In any event, we need not rule on the propriety of reserving the right to appeal recusal motions in every plea agreement. Rather, we find that these unique circumstances—the short time that passed between the recusal ruling and Herrera-Valdez's appeal, the relatively limited substantive proceedings between the ruling and the appeal, and the government's waiver of the mandamus issue—allow us to review the recusal motion on appeal. So we continue to the merits of Herrera-Valdez's § 455(a) argument.

### B.  28 U.S.C. § 455(a) Recusal Required

28 U.S.C. § 455(a) requires that a "judge … shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The purpose of the provision is to "promote public confidence in the integrity of the judicial process … [which] does not depend upon whether or not the

judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (7th Cir. 1989). Under § 455(a), all a party has to show is that a judge's impartiality *might* be questioned by a reasonable, well-informed observer. *See United States v. Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998). The test for appearance of partiality is whether an objective, disinterested observer fully informed of the reasons that recusal was sought would entertain a significant doubt that justice would be done in the case. *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985). There is inherent difficulty in applying this standard as a judge is "both [] its interpreter and its object." *SCA Servs. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977).

To address the difficulty in applying § 455(a), judges refer to the prohibitions outlined in § 455(b) because "affiliations that pose risks similar to those identified in § 455(b) may call for disqualification under § 455(a)." *Hatcher*, 150 F.3d at 637 (citing *Nat'l Union Fire Ins.*, 839 F.2d at 1229). 28 U.S.C. § 455(b) contains specific circumstances which mandate the recusal of a judge. § 455(a) is generally understood to encompass the situations outlined in § 455(b), but also a broader range of situations in which impartiality exists, but its appearance is compromised. Otherwise, "drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety." *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

Relevant to our case, § 455(b)(3) instructs that a judge "disqualify himself … [w]here he has served in governmental em-

ployment and … participated as counsel [or] adviser … con-
cerning the proceeding or expressed an opinion concerning
the merits of the particular case in controversy." To argue that
Judge Der-Yeghiayan properly denied Herrera-Valdez's mo-
tion, the government relies on our application of § 455(b)(3) in
*United States v. Lara-Unzueta*, 735 F.3d 954 (7th Cir. 2013). Sim-
ilar to the case here, in *Lara-Unzueta*, the defendant was also a
Mexican citizen who was a permanent resident, convicted of
crimes, and deported back to Mexico. *Id.* at 955–56. Judge Der-
Yeghiayan presided over the defendant's prosecution for ille-
gal reentry, even though he served as District Counsel for the
INS during Lara-Unzueta's deportation proceedings. *Id.* at
958. Lara-Unzueta argued that Judge Der-Yeghiayan should
have recused himself pursuant to § 455(b)(3), and our deci-
sion in *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir.
2001). In *Ruzzano*, we held that while an Assistant U.S. Attor-
ney must have actually participated in a related proceeding to
trigger recusal under § 455(b)(3), the same is not needed for a
judge who was "*the* [former] United States Attorney in [the]
judicial district whe[re] the case was prosecuted," who must
recuse regardless of direct participation. *Lara-Unzueta*, 735
F.3d at 960 (citing *Ruzzano*, 247 F.3d at 695). Lara-Unzueta ar-
gued that INS District Counsel was a similar role to the U.S.
Attorney, and Judge Der-Yeghiayan should also be disquali-
fied from cases relating back to his tenure leading INS's dis-
trict office. We rejected this comparison, and found that the
mandatory recusal requirement "for the [] Presidentially-ap-
pointed U.S. attorney … does not extend to other past service
in the Executive Branch." *Lara-Unzueta*, 735 F.3d at 960. Be-
cause there was no indication that Judge Der-Yeghiayan actu-
ally participated in Lara-Unzueta's removal case when he was

District Counsel, we affirmed his decision not to recuse himself. *Id.*

The government argues that the same outcome should result here. But unlike in *Lara-Unzueta*, Herrera-Valdez is appealing the denial of his recusal motion under § 455(a). Judge Der-Yeghiayan's *actual* participation in Herrera-Valdez's underlying deportation case is not a requirement to trigger recusal under § 455(a). Instead, we must answer the question of whether the judge's participation in Herrera-Valdez's original deportation case would lead a reasonable, well-informed observer to question his impartiality in adjudicating Herrera-Valdez's illegal reentry prosecution and sentencing. *See Hatcher*, 150 F.3d at 637. We hold that it does.

We do not question Judge Der-Yeghiayan's impartiality in presiding over Herrera-Valdez's illegal reentry case. But a judge's actual bias is not dispositive of the question of his disqualification under § 455(a), and observers outside of the judicial process "are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be." *Id.*, (citing *Mason*, 916 F.2d at 386). We conclude that a reasonable, disinterested observer could assume bias from the fact that the judge presiding over the defendant's prosecution for illegal reentry was the same person who ran the office that pursued, and succeeded in obtaining, the removal order that is the source of his current prosecution.

This is particularly the case given that the linchpin of Herrera-Valdez's case is his collateral attack against the removal order. It is reasonable to perceive that a judge may consciously or unconsciously credit the government's arguments that a removal order is valid when that same judge headed the office that sought and succeeded in obtaining the removal

order. Judge Der-Yeghiayan's name appears on pleadings that advanced the INS's efforts to deport Herrera-Valdez. Members of the legal profession and complex government bureaucracies may understand that this does not necessarily mean that Judge Der-Yeghiayan reviewed each pleading on which his name appeared. Certainly it is not proof of the kind that would trigger recusal under § 455(b)(3). But a disinterested observer—within or outside of the legal profession—could reasonably conclude that attaching his name to certain pleadings suggests that Judge Der-Yeghiayan reviewed and approved the pleadings before they were submitted to the immigration court. As District Counsel, Judge Der-Yeghiayan had control over all of his office's decisions to pursue removal proceedings. How he delegated that control is open to speculation, and it is precisely that speculation that causes the perception of bias which is prohibited under § 455(a). Indeed, a reasonable observer could conclude that Judge Der-Yeghiayan was adjudicating the merits of a collateral attack against his own work product.[1]

---

[1] Recently, the Supreme Court announced a new rule that there is "an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Williams v. Pennsylvania*, ___ S. Ct. ____, 2016 LEXIS 3774 (June 9, 2016). It found that the involvement of a Pennsylvania Supreme Court justice in a post-conviction proceeding violated the Due Process Clause because the justice previously served as the prosecutor who approved pursuing the death penalty against the defendant.

While our case addresses only the interpretation of 28 U.S.C. § 455(a), we find instructive the Court's statement that "the involvement of multiple actors and the passage of time do not relieve the former prosecutor of the duty to withdraw in order to ensure the neutrality of the judicial process in determining the consequences that his or her own earlier, critical decision may have set in motion." *Id.* at *16. The Court also noted that statutes

We do not think such a perception of bias is dispelled by
the fact that to his recollection, Judge Der-Yeghiayan did not
participate directly in Herrera-Valdez's deportation proceed-
ings. Certainly, his memory could serve him right. We have
no doubt regarding Judge Der-Yeghiayan's honesty and un-
wavering commitment to impartiality in this case. But his con-
nection to Herrera-Valdez's underlying removal order, partic-
ularly given its centrality to Herrera-Valdez's defense, pro-
duces an appearance of bias which we cannot permit under
§ 455(a).

### III. CONCLUSION

For the foregoing reasons, we REVERSE the defendant's
conviction and direct the case to be reassigned to a new judge.

---

like the one before us "provide more protection than due process re-
quires" and that due process "demarks only the outer boundaries of judi-
cial disqualifications." *Id.* (citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813,
828 (1986)). Herrera-Valdez does not make a due process argument, so we
do not address the impact of *Williams* on any potential violations of Her-
rera-Valdez's due process rights. But the Court's pronouncement that the
basic tenets of due process require a judge to carefully consider prior per-
sonal involvement—even if only to approve actions primarily undertaken
by others—confirms our view that recusal in this case was required.